**SHELLY TRACTOR AND EQUIPMENT COMPANY, Libelant,**

v.

**THE Oil Screw BOOTS, Respondent.**

**No. 205.**

United States District Court
E. D. North Carolina,
Washington Division.

May 2, 1956.

Rodman & Rodman, Washington, N. C., for libelant.

LeRoy Scott, Washington, N. C., for respondent.

GILLIAM, District Judge.

This libel in rem was filed against the Oil Screw "Boots", a shrimper, alleging the furnishing of supplies and services amounting to $1,059.27. There is no controversy as to the furnishing of such supplies and services to the vessel and, nothing else appearing,

the libelant is entitled to a lien against the vessel and the bond filed in the proceeding. There is no specific charge that the prices charged were unreasonable or out of line, but respondent offered some evidence to the effect that the repairs which the libelant was engaged to perform could have been made for much less than libelant's bill. Such evidence is not sufficiently strong and definite to cause me to disregard the contrary evidence that the charges are fair and reasonable, and in accord with prevailing charges for the work done and the materials furnished. And so I find that the maritime lien of libelant is established.

■ The troublesome questions arise in connection with the allegations set up by the vessel as a counterclaim. As the claims set up arose out of the same transaction which is the basis of the libel they may be set up herein, at least to the extent of the amount of the libel claim.

The "Boots" was delivered to libelant under a verbal agreement for repairs to the clutch. It required 28 days to perform the repairs and the owner claims that such delay was unreasonable and resulted in damages in the amount of $1,500, arising from loss of use of the vessel for twenty days or more at the height of the Florida shrimp season. The owner further claims damages of $1,200 sustained by the vessel, when, during the course of the repairs, the captain, with the libelant's mechanic aboard, operated it so as to ram one of the bulkheads while attempting to dock, causing a bursting of the bow stern and knocking the motor out of line.

■ With respect to the claim for damages to the vessel, the owner, while admitting that his captain was at the wheel when the damage was done, takes the position that the repairs had not been completed and the vessel was still in the custody and control of libelant and owner's counsel makes this comment in his brief: "The captain was dependent on the mechanics and was at their mercy as to just what would work and what would not; if the weather was rough and the reverse gear not working, the mechanics should not have had the captain take the vessel out for testing. It is respectfully suggested that this was negligence on the part of the mechanics and makes the libelant liable for said damages."

So far as the condition of the weather is concerned, the captain was as much aware of it as the mechanic and should have been better able to appraise any danger that might have been incident to taking the vessel out for a test; and the evidence does not sustain a finding that any damage that may have been sustained by the vessel resulted proximately from the inoperative condition of the reverse gear or from any negligence of libelant in making the repairs.

■ With respect to damages resulting from the undue delay, the libelant concedes, as it must, that there was unusual and, perhaps, undue delay in completing the repairs, and that liability would ensue, provided the evidence of damage was sufficiently definite, which it contends it is not and provided, further, that such delay is not so explained by the evidence as to show that the delay was not caused by libelant's negligence. According to my findings, the evidence of loss is ample and sufficient to support an estimate of the amount, but I find that such delay did not result from any negligence of libelant.

By the very nature of the repairs, consisting of disassembling the clutch and substituting new for worn parts, the time which would be required to accomplish them was uncertain. The work was done by experienced mechanics and while it became necessary to tear down the clutch several times, it does not appear that such necessity was due to any fault of the mechanics, or to use of any defective parts for which libelant should be held accountable. It just seemed to be one of those troublesome repair jobs that take unexpected time and which appear from time to time, in spite of all that reasonably can be done. In my

opinion, as there was no agreement to complete the repairs within a specified time, the libelant certainly was not an insurer as to when they would be completed. The whole obligation of the libelant was to make the repairs in a workmanlike manner for a fair and reasonable charge, at prevailing prices, and use reasonable care to complete the repairs without undue delay.

■ The factor which accounted for most of the delay was one for which, according to my conclusion, libelant should not be held responsible. Upon disassembling the clutch the libelant noted the worn parts and substituted new ones from its stock on hand, parts sold to it by a reliable manufacturer; upon reassembling it was found that the clutch failed to operate properly; this necessitated another disassembling; eventually, libelant's mechanic found the trouble was due to the fact that some of the parts furnished by the manufacturer and used in the repairs were improperly machined, and, therefore, defective; thereupon, this situation was brought to the attention of the manufacturer, which furnished new and properly machined parts for use; thus the trouble was corrected; for these new parts and incidental labor no charge was made against the vessel. It is my conclusion that the unusual and unexpected delay in completing the repairs was not due to negligence of libelant, and that it is entitled to a decree. This conclusion is in accord with the view apparently held by the registered owner of the vessel after the bill of libelant was submitted but before the libel was filed. On May 19, 1954, the husband of the registered owner wrote libelant asking for further time within which to pay and promising to pay within a few weeks. Neither in this letter nor in telephone calls was any objection raised to the amount of the bill. This was offered for the first time after the libel was filed. It is true that the letter was written by the husband of the registered owner and that the telephone conversations were had with him, but it was he who had custody and control of the vessel and it was he, through the master, who made the contract for repairs. And it was the husband who was operating the vessel in the shrimping business, not the wife. And, besides, it is not really a matter of holding the wife liable for the conduct and statements of the husband, but simply looking to his conduct and statements after he had the bill as tending to bear out the righteousness of the Court's conclusion from the other evidence. Also, he was a witness and the evidence of his letter and telephone conversation goes to the weight of what he had to say with respect to the claim of libelant.

A decree accordingly will enter.