[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 8, 2005
THOMAS K. KAHN
CLERK

_____

No. 03-16575

_____

D. C. Docket Nos. 02-60690-CV-AJ
& 02-60706-CV-AJ

SWEET PEA MARINE, LTD., a
foreign corporation,

Plaintiff-Appellant
Cross-Appellee,

BOBBY STEVENSON, a Texas
citizen,

Plaintiff-Cross-Appellee,

versus

APJ MARINE, INC., a Florida
corporation,
ALAN P. JELLIS,

Defendants-Appellees
Cross-Appellants,

_____

A.P.J. MARINE, INC., a Florida
corporation,

Plaintiff-Appellee
Cross-Appellant,

versus

M/V SWEET PEA, her engines,
tackle, apparel, appurtenances,
furniture, Official No. 7708184,
in rem,

                                                                 Defendant,

SWEET PEA MARINE LTD., a
foreign corporation in
personam,

                                                    Defendant-Appellant
                                                        Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(June 8, 2005)**

Before BIRCH, CARNES and RONEY, Circuit Judges.

BIRCH, Circuit Judge:

This appeal requires us to review the propriety of an award of damages in admiralty and the imposition of a maritime lien on a pleasure yacht. Plaintiff-appellant/Cross-appellee Sweet Pea Marine, Ltd. ("Sweet Pea"), a Cayman Islands corporation whose sole enterprise is the upkeep and management of the vessel M/V Sweet Pea ("the Vessel"), appeals the district court's omnibus order in which it: (1)

2

entered the jury's verdict against Defendant-appellee/Cross-appellant APJ Marine, Inc. ("APJ") in the amount of $243,904 on Sweet Pea's claims brought on the basis of diversity jurisdiction; and (2) awarded APJ $244,689.31 in damages on its *in personam* maritime claim against Sweet Pea and its *in rem* maritime lien claim against the Vessel. Because there was complete diversity of citizenship between the parties when the case was filed, the district court's exercise of federal subject matter jurisdiction over Sweet Pea's claims was not improper. Because APJ failed to offer at trial any evidence on a required element of its admiralty claims, however, the district court's award of damages to APJ and its imposition of a maritime lien against the Vessel were clearly erroneous. Accordingly, the district court's order is **AFFIRMED** in part, **VACATED** in part, and **REMANDED**.

## I. BACKGROUND

This appeal arises from a dispute about an oral contract to outfit and remodel the interior of the Vessel, a 127-foot pleasure yacht. In September 1999, Alan Jellis, on behalf of APJ, met with Bobby Stevenson[1] to discuss the renovation of the Vessel. At that meeting, Jellis and Stevenson reached an oral agreement which the district court found included the following terms: (1) APJ would redesign and refit the interior of the Vessel and warranty that the work would result in a "world

---

[1] Stevenson, a citizen of Texas, is the trustee of the Bobby Stevenson Revocable Trust ("Trust"). The Trust is the sole shareholder of Sweet Pea, whose sole asset is the Vessel.

3

class vessel"; (2) the scope of the project may change and evolve over time; (3) the interior work would be done in tandem with engineering, electrical, and mechanical work being done by other parties; (4) the interior work was estimated to be completed within 9-12 months and would cost $1.75 million; and (5) APJ would be paid as follows: (a) Labor: Jellis would be paid $85/hour; skilled laborers would be paid $56/hour; semi-skilled laborers would be paid $36/hour; unskilled laborers would be paid $26/hour; and there would be no additional "mark-up" for work performed by these subcontractors; (b) Materials/Goods: APJ would add a 15% mark-up when it charged Sweet Pea for materials and supplies bought by APJ for the Vessel from vendors. In November/December 2000, the parties modified the contract such that APJ was responsible for the engineering, electrical, and mechanical work being done on the Vessel in addition to the interior work and, as a result, Jellis's pay rate was increased to $125/hour.

During the early part of 2001, Sweet Pea began to have problems with the work being done by APJ. APJ was behind schedule and kept submitting to Sweet Pea longer timetables for completion and increased cost estimates. Despite these problems, however, Sweet Pea continued to pay APJ for its work. In June 2001, Sweet Pea had Jellis and APJ audited and discovered irregularities in APJ's billing practices. For example, Sweet Pea's accountant found that APJ used

4

subcontractors to perform the interior work; that these subcontractors were hiring unskilled workers for $11/hour but were billing them at $22/hour as semi-skilled worker to APJ; and that APJ was then billing these workers to Sweet Pea as skilled workers at $56/hour. As a result of these irregularities and APJ's failure to complete the job according to its estimated schedule, Sweet Pea terminated APJ in November 2001.

At that point, Sweet Pea had paid APJ $4.3 million according to the agreed-upon rates ($355,000 went directly to APJ or Jellis and the rest was paid to vendors and laborers). In March 2002, APJ sent Sweet Pea a bill for $1.292 million for outstanding costs it had incurred prior to its termination. According to the bill, APJ had spent $5.6 million on the renovation of the Vessel ($3.67 million for labor, $1.878 million for materials/supplies, and $55,755 in petty cash), and was paid only $4.3 million by Sweet Pea. Sweet Pea refused to pay the outstanding balance.

On 17 May 2002, Sweet Pea filed a complaint against APJ in federal court based on diversity jurisdiction and alleged breach of an oral contract, negligent misrepresentation, fraud in the inducement, breach of an oral express warranty, and breach of fiduciary duties. In response, on 22 May 2002, APJ filed a complaint in personam against Sweet Pea and in rem against the Vessel for the $1.292 million it

5

claimed it was owed for work performed on the Vessel. APJ's claims were brought in federal court under admiralty jurisdiction, and therefore were framed as a breach of an oral contract under maritime law and as a maritime lien claim, rather than a claim for quantum meruit. The district court then issued a show cause order to require APJ to demonstrate why its admiralty claims should not be dismissed with instructions that it file the claims as counterclaims to the diversity action initiated by Sweet Pea. Although the district court initially dismissed APJ's complaint, it granted APJ's motion to reconsider because Sweet Pea had deposited a bond pursuant to admiralty law procedure to secure the Vessel in the in rem action, and APJ was concerned that a dismissal would forfeit its interest in that bond. Accordingly, the district court consolidated the two actions for discovery purposes, but allowed them to proceed on separate dockets.

On 20 October 2003, a two-week jury trial commenced in which both actions were tried together. Because Sweet Pea had demanded a jury for its diversity claims, the jury was allowed to render a verdict on Sweet Pea's claims. Because APJ's admiralty claims precluded resort to a jury, the district court allowed the jury to issue an advisory opinion on APJ's admiralty claims, but insisted that it would make the ultimate findings of fact for APJ's claims. At the conclusion of the trial, the jury found for Sweet Pea on its breach of warranty claim

6

and awarded it $239,000. The jury also found for Sweet Pea on its negligent misrepresentation and breach of fiduciary duty claims, but did not award any damages for these claims. The jury found for APJ on the breach of contract and fraud claims. In addition, in its advisory capacity, the jury found for APJ on its maritime claims in the amount of $244,000. Turning to APJ's claims, the district court found that the jury ruled against Sweet Pea on its contract-related claims, and therefore res judicata did not preclude it from reaching APJ's maritime contract claims. The district court found that APJ was not entitled to any compensation for labor performed by subcontractors because it had already been paid by Sweet Pea for the work performed and APJ was not entitled, under the terms of the oral contract, to any mark-up over the rate at which the subcontracted workers were billed to Sweet Pea. However, the district court found that APJ was entitled under the oral contract to a mark-up on goods and materials supplied to the Vessel, and that APJ had not yet recovered the agreed-upon mark-up. Accordingly, based on its conclusion that Exhibit 5 showed that APJ had paid $1,631,262.15 to vendors for goods and materials, the court multiplied that number by 15% and ruled that Sweet Pea owed APJ $244,689.31 in damages. The district court also imposed a maritime lien on the Vessel in the same amount.

On appeal, APJ argues that the district court lacked jurisdiction over Sweet

7

Pea's diversity claims because Sweet Pea's principal place of business was Florida and APJ was a Florida corporation. For its part, Sweet Pea argues that the district court erred by awarding APJ damages and imposing a maritime lien on the Vessel because APJ failed to present sufficient evidence on the required elements of its claims. Alternatively, Sweet Pea argues that the district court erred by refusing to set off its award of damages on APJ's admiralty claims with the jury's award of damages on Sweet Pea's diversity claims. We will address each argument in turn.

## II. DISCUSSION

A. <u>Jurisdiction Over Sweet Pea's Diversity Claims</u>

Because federal courts are courts of limited jurisdiction, we must address as a threshold matter APJ's argument that the district court lacked subject matter jurisdiction. See <u>Steel Co. v. Citizens for a Better Env't</u>, 523 U.S. 83, 94, 118 S. Ct. 1003, 1012 (1998) (noting that appellate courts must examine the subject matter jurisdiction of the trial court before considering the merits of the appeal). We review a district court's determination of its subject matter jurisdiction <u>de novo</u>. See <u>Asociacion de Empleados del Area Canalera v. Pan. Canal Comm'n</u>, 329 F.3d 1235, 1237 (11th Cir. 2003). A district court's finding as to a corporation's principal place of business ("PPB") for purposes of establishing diversity jurisdiction, however, is a question of fact and cannot be overturned

8

unless it was clearly erroneous.  See Vareka Invs., N.V. v. Am. Inv. Properties, Inc., 724 F.2d 907, 910 (11th Cir. 1984).

Subject matter jurisdiction based on diversity of citizenship exists in civil actions where the amount in controversy exceeds $75,000 and the action is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  28 U.S.C. § 1332(a)(3).  Diversity jurisdiction requires complete diversity between named plaintiffs and defendants.  See Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 580 n.2, 119 S. Ct. 1563, 1568 n.2 (1999) (citing Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806)).  For purposes of determining diversity, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  "A corporation's principal place of business is determined by looking at the 'total activities' of the corporation."  Bel-Bel Int'l Corp. v. Cmty. Bank of Homestead, 162 F.3d 1101, 1106 (11th Cir. 1998).  "This analysis incorporates both the 'place of activities' test (focus on production or sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policymaking functions of the corporation)."  Vareka Invs., N.V., 724 F.2d at 910. The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim.  See McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir.

9

2002) (per curiam).

Based on these standards, the district court's exercise of diversity jurisdiction was not improper. It was undisputed that the amount in controversy requirement was met and that Stevenson was a citizen of Texas, Sweet Pea was a Cayman Islands corporation, and Jellis and APJ were Florida citizens. Accordingly, APJ's argument hinges on its assertion that Sweet Pea's PPB was in Florida. With regard to Sweet Pea's PPB, however, the district court recited several facts which supported a finding that Sweet Pea's PPB was in the Cayman Islands: (1) Sweet Pea's mailing address was in the Cayman Islands; (2) the corporate records were maintained in the Cayman Islands; (3) the directors of Sweet Pea were located in the Cayman Islands; (4) annual meetings were held in the Cayman Islands; and (5) the Vessel, which was essentially Sweet Pea's only asset, was flagged under the Cayman Islands. See Vareka Invs., N.V., 724 F.2d at 910 (finding PPB based on the location of directors, corporate meetings, company records, and corporate mailing address). Because Sweet Pea's "business" was essentially the maintenance and use of the Vessel, which traveled to different destinations and throughout the Atlantic Ocean, the district court was entitled to give these "nerve-center"-related facts greater significance in determining PPB under the total activities test. See J.A. Olson Co. v. City of Winona, 818 F.2d 401,

10

409 (5th Cir. 1987) (noting that the "nerve center" test predominates in determining the PPB of a corporation with "far-flung" activities that cannot be confined to one location). Moreover, the court found several facts which supported the contention that Sweet Pea's PPB was located in Colorado: (1) the sole shareholder of Sweet Pea, the Bobby Stevenson Revocable Trust, operated under the laws of Colorado; (2) most of the payments made by Sweet Pea to APJ were made by Stevenson from his Colorado bank account; (3) invoices for APJ's work were sent to Stevenson in Colorado. In addition, the court found that neither Sweet Pea nor Stevenson owned property or maintained bank accounts in Florida. While the Vessel was in Florida for more than two years while it was being refurbished by APJ, neither Sweet Pea nor the Vessel had any other regular contacts with Florida either before the contract with APJ was executed or after it was terminated. Accordingly, based on these facts, the district court's determination that Sweet Pea's PPB was not in Florida was not clearly erroneous.[2]

---

[2] We note that while the burden to establish the existence of federal subject matter jurisdiction rests with the party bringing the claim, a corporation's citizenship by virtue of its principal place of business need not be conclusively determined to satisfy § 1332 provided the party asserting the claim demonstrates diversity by conclusively establishing the corporation's citizenship by virtue of its State of incorporation and by demonstrating that the corporation's PPB is not in a State which would destroy complete diversity. See Walker v. Armco Steel Corp., 446 U.S. 740, 741-42, 100 S. Ct. 1978, 1980 (1980) (stating that diversity jurisdiction existed where one party was "a resident of Oklahoma" and the opposing party was "a foreign corporation having its principal place of business in a State other than Oklahoma"); Amoco Rocmount Co. v. Anschutz Corp., 7 F.3d 909, 916 & n.3 (10th Cir. 1993); Harris v. Black Clawson Co., 961 F.2d 547, 551 n.12 (5th Cir. 1992). Accordingly, the district court's failure to

11

Therefore, because there was complete diversity between the parties, the district court had subject matter jurisdiction over Sweet Pea's claims pursuant to § 1332(a)(3).

B. Award of Damages and Imposition of a Maritime Lien in Favor of APJ

Next, we examine Sweet Pea's argument that the district court erred by awarding damages to APJ and imposing a maritime lien on the Vessel. "In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous." McAllister v. United States, 348 U.S. 19, 20, 75 S. Ct. 6, 8 (1954). Moreover, a district court's findings of fact when sitting in admiralty are reviewed under the clearly erroneous standard. See Venus Lines Agency, Inc. v. CVG Int'l Am., Inc., 234 F.3d 1225, 1228 (11th Cir. 2000).

Federal admiralty jurisdiction is invoked by a claim that an oral contract regarding the repair of a vessel was breached. See Hatteras of Lauderdale, Inc. v. Gemini Lady, 853 F.2d 848, 849-50 (11th Cir. 1988). To recover damages on such a claim, a plaintiff must prove (1) the terms of a maritime contract; (2) that the contract was breached; and (3) the reasonable value of the purported damages. See

_____

determine whether Sweet Pea's PPB was in the Cayman Islands or Colorado was not reversible error where it found that Sweet Pea was a foreign corporation and that its PPB was not in Florida.

12

Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 605-06, 111 S. Ct. 2071, 2073 (1991); Krauss Bros. Lumber Co. v. Dimon S.S. Corp., 290 U.S. 117, 124, 54 S. Ct. 105, 107 (1933). To establish a maritime lien on a vessel pursuant to 46 U.S.C. § 31342 in an in rem action, a plaintiff must prove: (1) it provided "necessaries" (2) at a reasonable price (3) to the vessel (4) at the direction of the vessel's owner or agent. See S.E.L. Maduro (Florida), Inc. v. M/V Antonio De Gastaneta, 833 F.2d 1477, 1482 (11th Cir. 1987).

Because Sweet Pea argues, inter alia, that APJ failed to present any evidence that the charges for goods and materials listed in Exhibit 5 were reasonable, we focus our inquiry on the few cases which have construed the reasonableness element in APJ's admiralty claims. According to these cases, the "reasonableness" of charges, in the maritime context, is measured by whether they are "customary," Ex parte Easton, 95 U.S. 68, 77 (1877), and "in accord with prevailing charges for the work done and the materials furnished," Shelly Tractor & Equip. Co. v. The Oil Screw Boots, 140 F. Supp. 425, 426 (E.D.N.C. 1956). Accordingly, to satisfy the evidentiary burden on this element, a plaintiff must present some modicum of evidence which compares the charges claimed with what other competitors would have charged for similar work or materials. See id.; see also Crescent Ship Serv. v. M/V Mitera Vassiliki, No. 94-2391 (E.D. La. June 28, 1995) (declining to grant

13

summary judgment on the reasonableness element because plaintiff had not proffered any evidence that the charges were "reasonable, competitive, or consistent with the prices charged by other firms in the industry"). This burden may be satisfied by witness testimony that the charges were reasonably in accord with industry standards. See Jones v. Horton & Horton, Inc., 100 F.2d 345, 346 (5th Cir. 1938). The failure to present such evidence, however, dictates that a plaintiff cannot prevail on its maritime claims. See TTT Stevedores of Tex., Inc. v. M/V Jagat Vijeta, 696 F.2d 1135, 1141 (5th Cir. 1983).

Based on these standards, Sweet Pea argues that APJ failed to present any evidence by which the finder of fact could have determined that the charges summarized in Exhibit 5 were reasonable.[3] APJ makes two arguments in response. First, APJ argues that Sweet Pea waived its ability to contest the reasonableness of charges for goods and materials because, as the district court found, Sweet Pea agreed to a 15% mark-up on goods and materials purchased by APJ. That the parties agreed to a general mark-up on goods and materials, however, has no

_____

[3] While the jury, in its advisory capacity, made an implicit finding on the reasonableness element by awarding damages to APJ on its admiralty claims, this determination should have had no binding effect on the district court. See Sherman v. Burke Contracting, Inc., 891 F.2d 1527, 1529 n.4 (11th Cir. 1990) (per curiam). The district court was the ultimate finder of fact on APJ's admiralty claims. In this capacity, however, the district court did not make any specific findings in its order as to whether the amounts listed in Exhibit 5 were reasonable; rather, its award of damages in favor of APJ constitutes an implicit finding of reasonableness. Accordingly, in the absence of specific findings, we must examine the record for evidence that supports the district court's conclusion.

14

relevance for whether the actual prices of those goods and materials subject to the mark-up were reasonable. While the inclusion of a mark-up does not necessarily bar a maritime lien claim, see Galehead, Inc. v. M/V Anglia, 183 F.3d 1242, 1247 (11th Cir. 1999) (per curiam), it is not logically probative of whether the charges underlying the lien claim are reasonable. Accordingly, APJ's waiver argument is unpersuasive.[4]

Second, in its brief, APJ cites generally a 120-page span of trial testimony and asserts that it adduced evidence which established the reasonableness of the charges in Exhibit 5.[5] A thorough review of the testimony cited by APJ, however, demonstrates otherwise. In fact, in our review of the entire record, we discovered a dearth of any evidence submitted by APJ which would support the inference that the charges for goods and materials were reasonable. In its case in chief, no witness for APJ directly testified that the charges listed in Exhibit 5 were

---

[4] We note that APJ makes an additional waiver argument on appeal. Based on its reading of an isolated remark by Sweet Pea's counsel, see R8 at 1412-13, APJ argues that Sweet Pea conceded that the charges in Exhibit 5 were reasonable and therefore waived its ability to contest reasonableness on appeal. Our review of the record, however, reveals that Sweet Pea's counsel was remarking on the admissibility of such evidence and not whether it conclusively established APJ's burden on the reasonableness element. Moreover, because the record demonstrates that counsel for Sweet Pea repeatedly argued that APJ had not met its burden on the reasonableness element following the colloquy cited by APJ, see, e.g., R8 at 1510-11, 1550, we reject APJ's argument that Sweet Pea conceded the reasonableness of APJ's charges for goods and materials.

[5] Because the district court specifically ruled that Exhibit 5 was not to be construed as evidence of the reasonableness of APJ's payments to vendors for goods and materials, see R6 at 734, the admission into evidence of Exhibit 5 did not satisfy APJ's burden. Accordingly, APJ had the burden to offer testimony or other evidence regarding the reasonableness of the charges.

15

reasonable based on industry standards. Likewise, there was no indirect evidence by which a trier of fact could conclude that APJ satisfied its burden on the reasonableness element. For example, there were several instances in which witnesses for APJ testified that the mark-up on goods and materials bought by APJ was "reasonable." See R8 at 1298-99, 1426. However, as we noted in our disposition of APJ's first waiver argument, testimony about the reasonableness of the mark-up does not establish that the underlying prices subject to the mark-up were reasonable. In addition, APJ offered testimony from Jellis that the invoices which were used to create Exhibit 5 represented the "at cost" price—i.e., without any mark-up—that APJ purchased goods and materials from vendors. See R6 at 810, R7 at 1081, 1119. Stating what APJ paid for goods and materials, however, in the absence of any evidence of comparable industry pricing to benchmark the pricing for these goods and materials, does not provide any basis for a trier of fact to conclude that APJ paid reasonable prices for the goods and materials. In fact, Jellis admitted that he would routinely receive invoices from vendors and forward them to Stevenson for payment without any inquiry into the reasonableness of what was being charged. See R6 at 857; R7 at 1150. Moreover, there was no evidence that APJ sought bids from various suppliers and ultimately contracted with the low-cost provider. Accordingly, testimony regarding what the goods and

16

materials "cost" APJ cannot be taken as probative of the reasonableness of the charges in Exhibit 5. In addition, Jellis testified that he would refrain from charging Sweet Pea for certain items, which ultimately discounted the total amount of charges APJ billed to Sweet Pea. See R6 at 883. Assuming some of these "discounts" resulted in the exclusion of certain goods and materials from Exhibit 5, this evidence still does not speak to the reasonableness of the charges actually listed in Exhibit 5. Finally, we note that while there was testimony that the labor rates charged by APJ for subcontractors were reasonable based on the industry standard, see R8 at 1298, 1426, the reasonableness of these rates have no bearing on whether the prices for goods and materials bought from vendors were reasonable. In sum, our review of the record confirms that APJ presented no evidence by which a trier of fact could infer that the charges listed in Exhibit 5 were reasonable according to industry standards. Accordingly, because such a showing was a required element for APJ's maritime claims, the district court's award of damages in favor of APJ and its imposition of a maritime lien on the Vessel were clearly erroneous. See Hart v. Yamaha-Parts Distribs., Inc., 787 F.2d 1468, 1473 (11th Cir. 1986) (reversing district court's determination because it was supported by no evidence in the record and therefore was clearly erroneous).[6]

---

[6] In addition to its argument about the lack of evidence on the reasonableness element, Sweet Pea argues that APJ also failed to produce sufficient evidence that the goods and materials

17

C. Refusal to Set Off Diversity and Admiralty Judgments

Finally, Sweet Pea argues that the district court erred by refusing to set off its judgment in favor of APJ on its maritime claims against the jury's award to Sweet Pea on its diversity claims because the claims were derived from the identical set of operative facts. See Blount v. Windley, 95 U.S. 173, 177 (1877) (discussing the propriety of setting off two judgments where they constitute "mutual obligations [which] have grown out of the same transaction"); Mecom v. Levingston Shipbuilding Co., 622 F.2d 1209, 1216-17 (5th Cir. 1980) (setting off judgment given in admiralty with judgment given on counterclaim arising from the same set of operative facts). Based on our disposition of the district court's award of damages in favor of APJ, however, the issue of set-off has been mooted, and therefore we decline to consider the merits of Sweet Pea's set-off arguments.

## III. CONCLUSION

In this appeal, we were required to review the propriety of the district court's exercise of diversity jurisdiction and its disposition of admiralty claims. As we have explained, because the district court properly found that Sweet Pea's principal

---

were actually delivered to the Vessel. See Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 12-13, 41 S. Ct. 1, 4-5 (1920) (describing the evidentiary burden in a maritime lien claim to establish that goods and materials were actually delivered to a vessel); Container Applications Int'l, Inc. v. Lykes Bros. S.S. Co., 233 F.3d 1361, 1366 (11th Cir. 2000) (same). Because APJ's failure to present any evidence on the reasonableness element dictates reversal in favor of Sweet Pea on APJ's admiralty claims, however, we need not address the merits of this argument to decide the instant appeal.

place of business did not destroy complete diversity, its exercise of jurisdiction over Sweet Pea's diversity claims was not improper. The district court's award of damages in favor of APJ and its imposition of a maritime lien on the Vessel, however, were clearly erroneous. Maritime liens "encumber commerce," People's Ferry Co. v. Beers, 61 U.S. 393, 401 (1858), and therefore are "disfavored in the law" and construed "*stricti juris*" by courts, Container Applications Int'l, Inc. v. Lykes Bros. S.S. Co., 233 F.3d 1361, 1366 (11th Cir. 2000). Consequently, where a litigant has failed to satisfy the requisite evidentiary burden, a lien should not be imposed. Accordingly, here, because APJ failed to present any evidence on a required element of its admiralty claims, the district court clearly erred by finding in favor of APJ. Thus, the district court's omnibus order is **AFFIRMED** in part, **VACATED** in part, and **REMANDED** with instructions to enter a final judgment on APJ's admiralty claims consistent with this opinion.