[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10447
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-22237-MGC


KOL B'SEDER, INC.,
A Florida Corporation,

Plaintiff - Counter Defendant -
Appellant,

versus

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO
CERTIFICATE NO. 154766 UNDER CONTRACT NO.
B0621MASRSWV15BND,

Defendant - Appellee,

GLASS-TECH CORP.,
A Florida Corporation,

Defendant - Counter Claimant -
Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(March 12, 2019)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

The owner of a yacht that partially submerged while at a boatyard for repairs

sued its insurer and the boatyard; the boatyard countersued after the yacht owner

refused to reimburse it for rescuing and storing the yacht.  The district court

granted summary judgment to the insurer and the boatyard, and the yacht owner

appealed.  After careful review, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Kol B'Seder, Inc. is a limited liability company that owns a yacht called the

*Sababa*.  Kol B'Seder's sole managing member is Noreen Sablotsky.  At all times

relevant to this lawsuit, Kol B'Seder insured the *Sababa* against accidental losses

through a policy with Certain Underwriters at Lloyd's of London ("Underwriters").

During the eight years leading up to the submersion incident that gave rise to

this case, the *Sababa* suffered engine troubles that required years to fix and

underwent major repairs to its rudder and hull.  In the two years preceding the

submersion, the *Sababa* continued experiencing problems, even during short trips,

2

and needed repairs and sometimes replacements for its anchor winch, generator, batteries, bilge pumps, sun pads, vinyl, and isinglass. One to two months before the submersion, it is possible that the *Sababa* touched bottom in what is known as a "grounding." Doc. 53-1 at 64.[1] Sablotsky thought at the time that the *Sababa*'s propellers had only kicked up some mud and that the yacht was undamaged.

While preparing to take the *Sababa* on a longer trip, Sablotsky decided to sail it to Glass-Tech Corp.'s boatyard on a Friday for it to be hauled out of the water for repairs. Before bringing the boat in, Sablotsky sent a text message to Glass-Tech's owner asking if she could drop the yacht off that day. The owner texted back, "Yes. That's fine. I may not be able to haul till Monday. But it will at least be here and so we can haul it Monday. So bring it over when u can." Doc. 71-1 at 1. Sablotsky understood when she sailed the *Sababa* to Glass-Tech's boatyard on Friday that it was possible Glass-Tech would not haul the *Sababa* out of the water until Monday.

Upon the *Sababa*'s arrival at Glass-Tech's boatyard, Sablotsky did not inform Glass-Tech that the boat had not received bottom maintenance in more than three years. Sablotsky also did not ask anyone at Glass-Tech to plug the vessel into shore power, nor did she plug it in herself.

---

[1] "Doc. #" refers to the numbered entries on the district court's docket.

Glass-Tech did not haul the *Sababa* out of the water that Friday. Two days later, on Sunday, a Glass-Tech employee discovered that the vessel had become partially submerged. After informing Sablotsky, Glass-Tech hauled the *Sababa* out of the water and took measures to preserve the vessel. Sablotsky never paid Glass-Tech for the work it performed on the *Sababa* or for the costs of continuing to store the vessel when no arrangements were made to pick it up.

After learning of the *Sababa*'s submersion, Kol B'Seder filed an insurance claim with its insurer, Underwriters. Under the terms of the insurance policy, Underwriters was obligated to cover damages resulting from accidents. But the policy excluded from its coverage damage resulting from "[w]ear and tear, gradual deterioration, osmosis, wet or dry rot, corrosion," "defects in design," and "[a]ny claims caused by or arising out of . . . lack of repair of [the *Sababa*] caused by the lack of reasonable care and due diligence in the . . . maintenance of [the *Sababa*]." Doc. 51-2 at 3-4.

Kol B'Seder contends that the *Sababa* submerged as a result of the grounding that possibly occurred one to two months earlier and that the loss therefore comes within the policy's coverage for accidents. Underwriters decided the loss did not qualify for accident coverage, however, and denied Kol B'Seder's claim. According to the report of the surveyor Underwriters hired to examine the *Sababa*, it was "possible" that a grounding had occurred, resulting in fracturing to

4

the starboard rudder log tabbing that could have caused salt water infiltration into the laminates and water pressure that pulled the rudder log backwards. Doc. 68-6 at 8. Yet the surveyor also noted that the yacht suffered from design and installation defects in the external rudder logs, as well as extensive deterioration and water damage in the external rudder, rudder log, fastener, plumbing, transom, and engine—all of which he identified as causes of the submersion. In addition, the surveyor explained that battery-powered bilge pumps previously removed water that infiltrated the engine space, but that the failure to plug the vessel into shore power meant that the pump batteries died, allowing water to flood the vessel. Relying on the surveyor's report, Underwriters concluded that the submersion resulted from design and installation defects along with Sablotsky's failure to do preventive maintenance, causes that fell within the policy's exclusions.

Kol B'Seder sued Underwriters for breach of contract and Glass-Tech for breach of contract, breach of warranty of workmanlike performance, and negligence. Glass-Tech counterclaimed for negligence and breach of contract. Underwriters moved for summary judgment on Kol B'Seder's single claim against it. Glass-Tech moved for summary judgment on Kol B'Seder's three claims against it and on its counterclaim for breach of contract. The district court granted both motions and denied Kol B'Seder's motion for reconsideration. Kol B'Seder timely appealed.

## II.    STANDARDS OF REVIEW

We review *de novo* the district court's grant of summary judgment. *Brown v. Crawford*, 906 F.2d 667, 669 (11th Cir. 1990). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden to show . . . that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a[n] . . . issue of [material] fact that precludes summary judgment." *Id.* Federal Rule of Civil Procedure 56 "requires the nonmoving party to go beyond the pleadings and[,] by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). We view all evidence and draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

We review for abuse of discretion whether the district court erred in denying a motion for reconsideration. *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010).

## III.    DISCUSSION

We affirm the district court's grants of Underwriters' and Glass-Tech's motions for summary judgment and denial of Kol B'Seder's motion for reconsideration.

### A. The District Court Did Not Err in Granting Summary Judgment to Underwriters on Kol B'Seder's Claim Against It.

Kol B'Seder appeals the district court's grant of summary judgment to Underwriters on its breach of contract claim.  Under the terms of the insurance contract, Underwriters is liable only for "direct accidental physical loss or damage."  Doc. 51-2 at 3.  Kol B'Seder insists it raised a triable issue as to whether an accidental grounding occurred and, if so, whether the grounding caused the *Sababa* to sink a month or so later.[2]  According to Kol B'Seder, the district court improperly weighed the evidence and made determinations as to Sablotsky's credibility as a deponent when it labeled the evidence of the grounding as "weak."  Doc. 100 at 11.  Even assuming a grounding incident occurred, however, we would still conclude that no genuine dispute existed as to the cause of the *Sababa*'s submersion.  Therefore, we need not decide whether the district court improperly

---

[2] Underwriters disputes that the grounding occurred and does not address whether, if the grounding did occur, Kol B'Seder would be entitled to coverage for an accidental loss.  We need not decide whether a grounding would qualify for accidental loss coverage, however.  As we explain below, there is no genuine dispute that the cause of the *Sababa*'s submersion was design and installation defects and Sablotsky's failure to maintain the yacht.  Kol B'Seder does not argue that design and installation defects and lack of preventive maintenance qualify for accidental loss coverage.

7

weighed evidence or made deponent-credibility determinations.  Our *de novo* review of the record leads to the conclusion that Underwriters was entitled to summary judgment.

Federal Rule of Civil Procedure 56 requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Even assuming a grounding occurred, we have not found—and Kol B'Seder has not identified—any place in the record where Kol B'Seder put forward evidence tending to show that the grounding caused the damage it believes Underwriters must cover.  Specifically, Kol B'Seder has not countered the surveyor's assessment regarding the cause of the submersion:

> [T]he design and installation of external rudder logs is poor. . . . [T]he external rudder and rudder log have been subjected to hydraulic forces over time, which contributed to or caused the tabbing holding the starboard rudder log to progressively fracture.  Fastener penetrations and plumbing penetrations contributed to the transom becoming oversaturated.  Some of the repairs performed in 2008 failed, when the rudder log came adrift and moved aft causing transferred fatigue to tabbing on the inside rudder shelf. . . . [W]ater had been ingressing the bilges in the engine space for some time thru the starboard rudder log and penetrations for the trim tab hydraulic plumbing.

Doc. 68-6 at 7.

8

The surveyor acknowledged the possibility of a grounding and that "the rudders may have been in the mud. The weight of the vessel may have caused the starboard rudder log tabbing to start fracturing." *Id.* at 8. But this was only one among a plethora of reasons he gave for why the *Sababa* sunk. Moreover, the surveyor also remarked that the "stained condition of the rudder shelf and corroded hydraulic plumbing fixtures as well as water stains around the inside rubber log on the rudder shelf w[ere] open and obvious and a prudent owner should have attended to this immediately." *Id.*

Rule 56 contemplates that a party opposing summary judgment may submit affidavits or declarations to dispute material facts. Any such affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Yet Kol B'Seder has offered nothing to counter the surveyor's conclusions in his report: no deposition, affidavit, expert report, or other document based on personal knowledge by an affiant or declarant who is competent to testify that the problems the surveyor catalogued were attributable to the grounding and not to design and installation defects or Sablotsky's failure to maintain the vessel.

Kol B'Seder argues that Sablotsky's deposition testimony was alone sufficient to preclude summary judgment for Underwriters. Even crediting her

9

testimony, however, we still are left only with evidence that a grounding occurred. Kol B'Seder has presented no evidence as to how the grounding caused the *Sababa*'s submersion. The only record evidence regarding the cause of the *Sababa*'s submersion comes from the surveyor's very specific observations. And Kol B'Seder has put forward nothing to dispute the accuracy of the surveyor's evaluation regarding the sources of damage.

Breach is a necessary element to prevail on a breach of contract claim. *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005); *Sulkin v. All Fla. Pain Mgmt., Inc.*, 932 So. 2d 485, 486 (Fla. Dist. Ct. App. 2006).[3] Although the insurance policy covers accidental losses, we discern no genuine dispute over the cause of the *Sababa*'s submersion—that it was not an accident but rather design and installation defects and Sablotsky's failure to maintain the vessel properly. Underwriters' refusal to pay out Kol B'Seder's insurance claim did not breach the contract, and Kol B'Seder's claim fails as a matter of law.

---

[3] The insurance contract between Kol B'Seder and Underwriters contains a choice-of-law clause indicating that Florida law should apply to this dispute. The parties do not address whether we should honor the choice-of-law clause or apply federal maritime law. Because the result is the same under both federal maritime law and Florida law, however, we need not decide this issue. *See Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 56 (5th Cir. 1967) (holding, in a maritime contract case, that because "application of state or federal law yields the same result . . . , we need not resolve the choice of law problem"). Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981 are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

10

Our analysis could end here, but we pause to note that the insurance policy specifically excluded from coverage "[w]ear and tear, gradual deterioration, osmosis, wet or dry rot, corrosion," "defects in design," and "[a]ny claims caused by or arising out of . . . lack of repair of [the *Sababa*] caused by the lack of reasonable care and due diligence in the . . . maintenance of [the *Sababa*]."  Doc. 51-2 at 3-4.  All of the issues the surveyor's report identified as the likely causes of the *Sababa*'s submersion fall within these exclusions.  Given the complete lack of evidence disputing that these issues caused the submersion, for this additional reason, we hold that Underwriters did not breach the contract, and Kol B'Seder's claim fails as a matter of law.  We affirm the district court's grant of summary judgment to Underwriters.

### B. The District Court Did Not Err in Granting Summary Judgment to Glass-Tech on Kol B'Seder's Claims Against It and on Its Counterclaim for Breach of Contract Against Kol B'Seder.

#### 1.  Kol B'Seder's Claims Against Glass-Tech

Kol B'Seder appeals the district court's grant of summary judgment to Glass-Tech on Kol B'Seder's claims for breach of contract, breach of warranty of workmanlike performance, and negligence.  Each claim depends on Glass-Tech's having promised or otherwise assumed a duty to haul the *Sababa* on Friday and plug it into shore power.  Since the record contains no evidence that Glass-Tech

11

promised or assumed any duty to perform these two tasks, the district court properly determined that all three claims fail as a matter of law.

The district court correctly determined that there was no contract for Glass-Tech to haul the *Sababa* on Friday or to connect it to shore power and thus that Glass-Tech was entitled to summary judgment on Kol B'Seder's breach of contract claim against it. A valid contract is a necessary element of a breach of contract claim. *Sweet Pea Marine*, 411 F.3d at 1249; *Sulkin*, 932 So. 2d at 486.[4] In turn, a valid contract requires an agreement as to what each party is promising or committing to do. *See Internaves de Mex. s.a. de C.V. v. Andromeda S.S. Corp.*, 898 F.3d 1087, 1093 (11th Cir. 2018) ("[O]ur interpretation of maritime contracts sounds in federal common law, so we look to the general common law of contracts."); Restatement (2d) of Contracts § 17 (1981) ("[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."); *Acosta v. Dist. Bd. of Trs. of Miami-Dade Cmty. College*, 905 So. 2d 226, 228 (Fla. Dist. Ct. App. 2005) ("It is well established that

---

[4] The parties and the district court left unclear whether federal maritime law or Florida law applies to Kol B'Seder's claims against Glass-Tech and Glass-Tech's contract counterclaim against Kol B'Seder. Because we conclude that the result for each claim and counterclaim is the same under both federal maritime law and Florida law, we do not conduct any choice-of-law analysis. *See Alcoa S.S. Co.*, 383 F.2d at 56 (holding that no choice-of-law analysis was necessary in maritime contract case); *see also Shapiro v. Associated Int'l Ins. Co.*, 899 F.2d 1116, 1118 n.2 (11th Cir. 1990) ("[C]hoice of law questions can be avoided if the laws of the different jurisdictions lead to identical results.").

a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract . . . ." (internal quotation marks omitted)).

All the evidence in the record supports the conclusion that Glass-Tech and Kol B'Seder never agreed that Glass-Tech would haul the *Sababa* on Friday or connect it to shore power. Sablotsky admitted that she understood before she sailed the *Sababa* to Glass-Tech's boatyard that Glass-Tech's owner "said he may not be able to do it [haul the *Sababa* out of the water] until Monday." Doc. 53-1 at 89. Kol B'Seder also informed the district court that it had "operated at all times with the assumption that . . . the vessel could be hauled that day [Friday] (but might have to wait until Monday)." Doc. 80 ¶ 27. Plainly Glass-Tech expressed no intent to bind itself to hauling the *Sababa* on Friday. Nor does Kol B'Seder dispute that Sablotsky never instructed Glass-Tech to plug the boat into shore power. Without an agreement that Glass-Tech was to haul the vessel on Friday or connect it to shore power, there was no contract for Glass-Tech to breach by doing neither. Kol B'Seder's breach of contract claim fails as a matter of law. We affirm the district court's grant of summary judgment to Glass-Tech on this claim.

The lack of a contract between Kol B'Seder and Glass-Tech to haul the yacht on Friday and to connect it to shore power means that Kol B'Seder's claim for breach of warranty of workmanlike performance also fails as a matter of law. Claims for breach of warranty of workmanlike performance sound in contract.

13

*See, e.g.*, *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309, 1312 (11th Cir. 2003); *Lonnie D. Adams Bldg. Contractor, Inc. v. O'Connor*, 714 So. 2d 1178, 1179 (Fla. Dist. Ct. App. 1998). Where the defendant has a contractual duty to perform a service, it must perform that service "in a workmanlike manner," *Vierling*, 339 F.3d at 1310, which generally means properly, safely, and competently, *Ryan Stevedoring Co. v. Pan-Atl. S.S. Corp.*, 350 U.S. 124, 133 (1956); *Lonnie D. Adams*, 714 So. 2d at 1179. But without contractual duties to haul the boat on Friday and to plug it into shore power, Glass-Tech had no duty to perform these tasks in a workmanlike manner. We thus affirm the district court's grant of summary judgment to Glass-Tech on Kol B'Seder's claim for breach of warranty of workmanlike performance.

Kol B'Seder's negligence claim, too, fails as a matter of law, because Kol B'Seder has not demonstrated that Glass-Tech had a duty to haul the boat on Friday or to plug it into shore power. Duty, an essential element of a negligence claim, is a question of law, not of fact. *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (applying Florida law of negligence); *Chavez v. Noble Drilling Corp.*, 567 F.2d 287, 289 (5th Cir. 1978) (applying federal maritime law of negligence). Even though the movant for summary judgment bears the burden of showing the absence of any genuine issue of material fact, because duty is a question of law, Kol B'Seder bears the burden of showing that Glass-Tech had a

14

duty to haul the boat on Friday and plug it into shore power, a burden it has failed to carry.  Kol B'Seder points to no cases establishing such a duty and cites no expert evidence establishing that Glass-Tech violated the industry standard.  We must grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  Because Kol B'Seder has failed to meet a necessary element of its negligence claim, this claim fails as a matter of law; we affirm the district court's grant of summary judgment on Kol B'Seder's negligence claim.

### 2.  Glass-Tech's Breach of Contract Counterclaim Against Kol B'Seder

Kol B'Seder appeals the district court's grant of summary judgment in favor of Glass-Tech on its breach of contract counterclaim against Kol B'Seder.  Glass-Tech asserted that it had a contract with Kol B'Seder to rescue and store the *Sababa* after its submersion, services for which Kol B'Seder has refused to pay.  Kol B'Seder argues that the district court failed to provide the reasons for its grant of summary judgment to Glass-Tech on this counterclaim.[5]  We affirm the district

---

[5] Kol B'Seder contends that the district court did not make clear which of Glass-Tech's counterclaims—negligence or breach of contract—it was deciding.  However, the docket entry for Glass-Tech's motion for summary judgment states, "MOTION for Summary Judgment on *Plaintiff's Claims and On Count II of Counterclaim* by Glass-Tech Corp."  Appellant App., Tab A at 7.  Count II of Glass-Tech's counterclaim was for breach of contract.  Given that Kol B'Seder included the district court's docket sheet in its appendix to its opening brief on appeal,

court's grant of summary judgment, however, based on our *de novo* review of the record.[6]

The elements of a breach of contract claim are the existence of a contract, material breach, and damages. *Sweet Pea Marine*, 411 F.3d at 1249; *Sulkin*, 932 So. 2d at 486. The problem for Kol B'Seder is, again, that it has failed to marshal any record evidence that creates a genuine dispute as to any material fact related to these three elements. Regarding the first element, the existence of a contract, Kol B'Seder admitted to entering into a contract with Glass-Tech for "hauling, . . . use of pier or storage space, [and] repairs . . . ." Doc. 17-1 at 4, ¶ 1. Nevertheless, Kol B'Seder denies there was a contract for Glass-Tech to save the *Sababa* from its partial submersion and to stop water damage; instead, Kol B'Seder argues it never agreed to Glass-Tech's offer to perform emergency services. Yet the only evidence in the record is that Kol B'Seder agreed—at least tacitly—to Glass-Tech's offer. The day after Glass-Tech discovered the *Sababa* was partially submerged, Glass-Tech's owner informed Sablotsky, "The engine and gears have water[.] [W]e[']re taking it all out now. Going to do what we can to preserve. The Gen is wet also. Best to replace." Doc. 53-2 at 95. Sablotsky's only reply was,

---

we assume it was aware of the docket sheet's clear notation that Glass-Tech moved for summary judgment on Count II of its counterclaim.

[6] We may affirm the district court on any ground supported by the record. *See Bonanni Ship Supply, Inc., v. United States*, 959 F.2d 1558, 1561 (11th Cir. 1992).

"Ugh it's brand new," presumably referring to the generator. *Id.* Sablotsky wrote nothing more, never requesting that Glass-Tech refrain from performing any emergency services.

In addition, in Glass-Tech's statement of undisputed material facts, it stated, "The Yard lifted the Vessel out of the water and mitigated the damages to the vessel by dewatering the vessel and preserving the engines and other machinery." Doc. 68 ¶ 49. Kol B'Seder's response to this statement was "Undisputed." Doc. 80 ¶ 49. Glass-Tech's statement also said "[t]his work was approved by the Owner and no objection to the work performed by the Yard was made." Doc. 68 ¶ 50. Kol B'Seder responded, "Kol B'Seder, as would any reasonable vessel owner whose vessel submerged while in the care and custody of a ship yard, expected Glass-Tech to take any necessary steps to preserve the vessel." Doc. 80 ¶ 50. If Kol B'Seder intended to dispute whether it agreed to Glass-Tech taking measures to preserve the yacht, we fail to see how it did so in its response to Glass-Tech's statement of undisputed material facts.

Furthermore, when Sablotsky was asked in her deposition whether she had approved the services Glass-Tech performed to "lift the vessel out of the water and preserve the equipment and machinery," she admitted, "I had preapproved him lifting it out of the water, hopefully before it sank. And I did not approve the other stuff, but I—before he did it, but I do approve that he did it." Doc. 53-1 at 180.

17

No genuine dispute exists as to whether Glass-Tech and Kol B'Seder had a contract for Glass-Tech to perform the emergency services on the *Sababa* and to store the vessel.  The only record evidence Kol B'Seder has identified as calling into question whether it agreed to Glass-Tech's offer to preserve the vessel is the above-quoted excerpt from Sablotsky's deposition.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).  Reading Sablotsky's deposition excerpt in the context of the entire record, we view it as consistent with, not contrary to, the rest of the above-quoted evidence indicating that she approved Glass-Tech's emergency services.  Glass-Tech has met the first element of its breach of contract claim by showing it had a contract with Kol B'Seder to take emergency steps to preserve the *Sababa* and to store it.

As for the second element, material breach, the contract required Kol B'Seder "to make payments . . . for services, labor and materials supplied by Glass-Tech upon [Glass-Tech's] demand."  Doc. 17-1 at 4, ¶ 5.  Glass-Tech attached to its statement of undisputed material facts an invoice enumerating the emergency services it performed on the *Sababa*, the storage notes, and the billed charges.  Kol B'Seder has breached the contract by refusing to pay Glass-Tech for these services.

18

Regarding the third element, damages, Glass-Tech's invoice indicates that, as of January 16, 2017, it had suffered damages of $70,111.92.  Doc. 68-7 at 2.  These damages equal Glass-Tech's billed charges for rescuing and storing the *Sababa*.  Kol B'Seder points to nothing in the record showing that the services Glass-Tech performed were unnecessary to rescue the *Sababa*, that it did not actually perform these services, or that it was charging unreasonable rates.  We are left to conclude that Glass-Tech's invoice is an accurate statement of the damages it suffered through January 16, 2017.

Glass-Tech has carried its burden of demonstrating that no genuine dispute of material fact exists as to the elements of its counterclaim for breach of contract.  Kol B'Seder has failed to raise a genuine dispute.  *Clark*, 929 F.2d at 608.  These two parties had a contract for emergency services for and storage of the *Sababa*, Kol B'Seder breached that contract by failing to pay for these services, and the uncontradicted evidence shows that Glass-Tech suffered damages equal to $70,111.92 as of January 16, 2017.  Doc. 68-7 at 2.  We affirm the district court's grant of summary judgment to Glass-Tech on its counterclaim for breach of contract and the district court's order for Kol B'Seder to pay $70,111.92 and any additional damages that have accrued since January 16, 2017, the date of the last invoice Glass-Tech submitted to the district court, as long as Glass-Tech can substantiate the post-January 16, 2017 damages.

19

**C. The District Court Did Not Abuse Its Discretion in Denying Kol B'Seder's Motion for Reconsideration.**

Because we affirm the district court's grant of Underwriters' and Glass-Tech's motions for summary judgment, we conclude that the district court did not abuse its discretion in denying Kol B'Seder's motion for reconsideration.  *See Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1254 (11th Cir. 2007) ("Because we find the record supports the grant of summary judgment, the district court did not abuse its discretion in denying the motions for reconsideration and clarification."). We affirm the district court's denial of that motion.

## IV.    CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's orders granting Underwriters' and Glass-Tech's motions for summary judgment and denying Kol B'Seder's motion for reconsideration.

**AFFIRMED.**