**VAREKA INVESTMENTS, N.V., a Netherlands Antilles Corp., Plaintiff-Appellee,**

v.

**AMERICAN INVESTMENT PROPER-TIES, INC., a Florida Corp., Defendant-Appellant.**

No. 82–5722.

United States Court of Appeals, Eleventh Circuit.

Feb. 9, 1984.

Rehearing Denied March 21, 1984.

Lawrence H. Rogovin, North Miami Beach, Fla., for defendant-appellant.

Steel, Hector & Davis, Vance E. Salter, Miami, Fla., for plaintiff-appellee.

Before RONEY, HATCHETT and ANDERSON, Circuit Judges.

HATCHETT, Circuit Judge:

In this diversity case, we review the district court's award of damages to a lessor resulting from a commercial lease transaction and the termination of the lease. We affirm.

## FACTS

Vareka Investments, N.V. (Vareka) was incorporated under the laws of the Netherlands Antilles on October 20, 1978, to serve as a passive investment vehicle. With the exception of a shareholder who is a citizen of Italy residing in Montreal, Canada, all of the shareholders of Vareka are citizens and residents of the Republic of Ecuador. Leonard E. Treister and Jerome J. Cohen were shareholders, officers, and directors of American Investment Properties, Inc. (AIP). In January, 1978, AIP purchased The Quarters Office Park. During 1978, a company half owned by Treister and Cohen, Greater American Management Corporation (GAMC), operated The Quarters Office Park (The Quarters). In January, 1979, Vareka purchased The Quarters from AIP. Simultaneously, AIP leased The Quarters back from Vareka under a fifteen-year net lease under which AIP was obligated to pay Vareka a minimum "net" return of Vareka's cash investment. AIP was also obligated to pay all expenses and assume all duties to the subtenants and to operate The Quarters. Vareka had no liability whatsoever for the operation, maintenance, or expenses of The Quarters. Treister and Cohen, individually, guaranteed AIP's performance under the lease for the first five years, with an aggregate liability of $100,-000.

On January 15, 1979, Vareka filed an "Application by Foreign Corporation for Authorization to Transact Business in Florida" with the Florida Department of State. The State of Florida granted the application, and Vareka became qualified to transact business in Florida. The qualification

listed as the "address of principal office" of Vareka, 1400 Southeast First National Bank Building, Miami, Florida. A Resident Agent Certificate was also filed with the Secretary of State of Florida. On the certificate, Vareka designated an attorney at a Miami, Florida, law firm as its resident agent. The law firm had represented Vareka in the negotiations and consummation of the transaction, and continues to represent Vareka in Florida.

In August, 1979, AIP notified Vareka that AIP intended to terminate the lease. The present actions were commenced in September, 1979, when Vareka filed suit. In October, 1979, the district court authorized Vareka to re-enter the premises for the purposes of operation and management, pursuant to the lease agreement. Vareka hired Coldwell Banker Property Management Company (Coldwell Banker) to operate the property from October, 1979, through the date of the trial.

### PROCEDURAL HISTORY

On September 4, 1979, soon after AIP advised Vareka of its intent to terminate, Vareka sued AIP under the lease. On September 14, 1979, Vareka sued Treister and Cohen based on the Guaranty. The trial court consolidated the cases.

Vareka moved for partial summary judgment on liability. The district court withheld ruling on Vareka's motion for summary judgment pending a determination of whether the court lacked subject matter jurisdiction. After holding an evidentiary hearing and considering memoranda of law on the issue of jurisdiction, the district court concluded that subject matter jurisdiction existed. Thereafter, the district court granted Vareka's motion for summary judgment as to the liability of AIP, Treister, and Cohen. The district court conducted a bench trial and found that Vareka suffered $548,000 in damages due to AIP's breach of the lease, and that Vareka was entitled to collect $100,000 of that amount from Treister and Cohen under the Guaranty. AIP, Treister, and Cohen (appellants) then filed a "Motion to Alter or Amend Judgment" and a "Notice of Appeal." The district court denied the motion to alter or amend judgment. The appellants did not file a new notice of appeal.

### ISSUES

On appeal, we must decide whether the district court correctly concluded that it had subject matter jurisdiction; whether the district court correctly granted summary judgment; whether Vareka's cause of action for damages was premature; whether Vareka properly mitigated those damages; whether there was sufficient evidence to support the district court's award of damages; and whether Federal Rule of Appellate Procedure 4(a)(4) requires dismissal of this appeal.

A. Subject Matter Jurisdiction

Appellant, AIP, contends that the district court's finding that Vareka's principal place of business was in Quito, Ecuador, is clearly erroneous. After conducting an evidentiary hearing, the district court concluded that it had subject matter jurisdiction based on diversity. Under 28 U.S.C.A. § 1332(c), a foreign corporation is deemed to be a citizen of the state in which it has its principal place of business.[1] *Jerguson v. Blue Dot Investment, Inc.*, 659 F.2d 31, 35 (5th Cir.1981), *cert. denied*, 456 U.S. 946, 102

---

1. Title 28 U.S.C.A. § 1332(a) and (c) provides in pertinent part:

   (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

   (1) citizens of different States;
   (2) citizens of a State and citizens or subjects of a foreign state;

   (3) citizens of different States in which citizens or subjects of a foreign state are additional parties; and
   (4) a foreign state, defined in section 1603d(a) of this title, as plaintiff and citizens of a State or of different States.
   (c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. . . .

S.Ct. 2013, 72 L.Ed.2d 469 (1982).[2] One looks to the "total activity" of the corporation in order to determine its principal place of business. *Village Fair Shopping Center v. Sam Broadhead Trust,* 588 F.2d 431, 434 (5th Cir.1979). This analysis incorporates both the "place of activities" test (focus on production or sales activities), and the "nerve center" test (emphasis on the locus of the managerial and policymaking functions of the corporation). *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 (5th Cir.1980).

■ The question of a corporation's principal place of business is a question of fact. *Village Fair* at 433. Thus, we review the district court's determination that Vareka's principal place of business was Ecuador to determine whether it is clearly erroneous.

■ The district court found that all of Vareka's shareholders were citizens and residents of the Republic of Ecuador, with the exception of DiGiorgis, a citizen of Italy, residing in Montreal, Canada. Prior to institution of the present case, all corporate meetings were conducted, and all corporate decisions were made in Ecuador. The appellants were at all times relevant to this case residents and citizens of the state of Florida. The managing director of Vareka was a citizen and resident of Ecuador; the major investor in Vareka is an Ecuadorian corporation. Vareka was formed as a passive investment vehicle in order to invest funds in United States real estate. Jose Perez, the managing director of Vareka, received materials offering The Quarters for sale at his offices in Quito, Ecuador. In connection with the purchase of The Quarters, Vareka obtained loans from several Ecuadorian citizens. These loans were evidenced by promissory notes made, executed, and delivered in Quito, Ecuador. Under the long-term lease, AIP was obligated to pay all the expenses, assume all the duties to the subtenants, and operate The Quarters Office Park. Thus, Vareka was not involved in the day-to-day operation of this commercial property. At no time did any officer, director, employee, shareholder, or other representative of Vareka meet or communicate with any of the tenants at The Quarters. Likewise, no officer, director, employee, shareholder, or representative ever paid any utility bills, taxes, or service payments applicable to The Quarters, or take any other action which might be construed as operating or managing the property. Vareka had no corporate office in Miami, Florida. Although Vareka did not maintain a distinct corporate office in Quito, Ecuador, it maintained its books and records and held corporate meetings in Quito. Vareka's books and records were maintained with the part-time assistance of Perez's legal secretary and the accountant of another shareholder, in Quito. Otherwise, Vareka had no employees in Florida or elsewhere. Vareka directed AIP to make all lease payments to a Miami bank account. The sole signatories on the bank account were investors of Vareka. In August, 1979, when AIP notified Vareka that it intended to terminate the lease, AIP sent the notification to Vareka in Quito, Ecuador, via telex. The investors and shareholders of Vareka then met in Quito and responded to the advice of termination.

AIP argues that the final negotiations and closing occurred in Miami, Florida. Vareka qualified to do business in Florida and appointed a resident agent in Miami, Florida. All payments were to be sent to a Miami address. Correspondence from Vareka to AIP emanated from the office of the Miami lawyer. Finally, Vareka maintained a bank account in Florida for the purpose of receiving and disbursing all payments relating to The Quarters.

Based on the many factors cited by the district court, we conclude that the district court's holding that Vareka's principal place of business is in Ecuador, is not clearly erroneous. Since all appellants were citizens and residents of the state of Florida, the district court correctly concluded that it had subject matter jurisdiction.

**B. Summary Judgment as to Liability**

AIP argues that because Vareka resumed possession of The Quarters on AIP's

---

**2.** Former Fifth Circuit case, Section 9(1) of Public Law 96–452–October 14, 1980.

account, on an election of remedies theory, the cause of action for damages does not accrue until the end of the term of the lease.

The relevant portion of the Lease provides that the landlord may, without further notice to the tenant, in the event of default, exercise any one or more of the remedies set forth in the Lease. Section 9.02(b) provides:

Landlord may, without barring later election of any other remedy and without terminating this lease, at any time and from time to time (i) re-enter the premises with or without process of law, and manage and operate the same (ii) sublease any vacant portion of the Premises or any part or parts thereof, to any persons, and (iii) assume Tenant's interest in any or all subleases, for the account of Tenant or otherwise, and receive and collect the rents therefrom. In the latter event Landlord shall apply such rents first to the payment of such expenses as Landlord may have paid, assumed or incurred in recovering possession of the Premises, including costs, expenses, attorney's fees, and for placing the same in good order and condition or preparing or altering the same for subleasing, and all other expenses, commissions, and charges paid, assumed or incurred by Landlord in or in connection with subleasing the Premises, and then to the fulfillment of the covenants of Tenant. Any such subleasing as provided for herein may be for the remainder of the term of this lease or for a longer or shorter period. Landlord may execute any sublease made pursuant to the terms hereof either in Landlord's own name or in the name of Tenant, or assume Tenant's interest to and in any existing sublease of the Premises, as Landlord may see fit. No subtenant shall in any such event be under any obligation for the application by Landlord of any rent collected by Landlord from such subtenant to any and all sums due and owing under the provisions of this lease. In such event Tenant shall have no right or authority whatever to collect any rent whatever from any subtenant on the

Premises. In any case, and whether or not the Premises or any part thereof be re-let Tenant, until the end of what would have been the term of this lease in the absence of such expiration and whether or not the Premises or any part thereof shall [have] been re-let shall be liable to Landlord for, and shall pay to Landlord, any amount equal to:

(i) all Minimum Rent and Additional Rent which is otherwise payable under this lease, less

(ii) the net proceeds, if any, of any re-letting effected for the account of Tenant pursuant to the provisions of this Section 9.02, after deducting all Landlord's expenses in connection with such re-letting, including, without limitation, all repossession costs, brokerage commissions, legal expenses, attorneys' fees, expenses of employees, alteration costs, and expenses of preparation for such re-letting.

Tenant shall pay such amount to Landlord monthly on the days on which the Minimum Rent is payable under this lease, and Landlord shall be entitled to recover the same from Tenant on each such day.

■ In its May 19, 1982, order, the district court correctly stated that under Florida law, a lessor has an election of three alternative courses of action when the lease is breached by the lessee.

The lessor may treat the lease as terminated and retake possession for his own account, thus terminating any further liability on the part of the lessee; or the lessor may retake possession of the premises for the account of the lessee, holding the lessee liable for the difference between rental stipulated to be paid under the lease agreement and what, in good faith, the lessor is able to recover from a re-letting; or the lessor may stand by and do nothing, holding the lessee liable for the rent due as it matures, which means all remaining rent due if there is an acceleration clause and the lessor chooses to exercise the right to accelerate.

Coast Federal Savings and Loan Association v. DeLoach, 362 So.2d 982 (Fla.App. 1978). Re-entering the premises and re-letting for the account of the lessee is, thus, a remedy available under both the Lease and Florida law. Section 9.02(b) of the Lease.

■ In this case, the parties are in agreement, and the district court concluded, that the lease has not been terminated. Vareka re-entered The Quarters to manage and operate it for the account of AIP, pursuant to section 9.02(b). AIP argues that under Florida law a lessor's cause of action for damages does not accrue until the time when the forfeited term, if it had not been forfeited, would have expired. Hyman v. Cohen, 73 So.2d 393, 398 (Fla.1954); Kanter v. Safran, 68 So.2d 553, 558 (Fla.1953). Consequently, the court's grant of summary judgment regarding liability was error at this time. AIP also cites Coast Federal Savings for the proposition that when a lessor retakes possession for the account of the lessee, he loses the right to recover the full amount of the remaining rental due under an acceleration clause. Coast Federal Savings and Loan Association v. DeLoach, 362 So.2d 982, 984 (Fla.1978).

Coast Federal Savings is distinguishable. In this case, Vareka does not seek to recover "the full amount of remaining rental due." In its May 20, 1982, order, the district court specifically stated:

Issues have been raised and arguments have been presented concerning prospective rights and liabilities under the lease agreement. This ruling does not address those issues. It deals only with the liability of the defendants up to the date of trial. Whether the defendants could seek a recovery of future profits, should they ever exist, if the plaintiff continues to hold the property for their account, remains an open question. [Emphasis added.]

Neither Kanter nor Hyman preclude summary judgment as to liability. The district court correctly cited Chandler for the proposition that, under Florida law, parties may negotiate any contract not violative of law or public policy. Chandler Leasing Division, etc. v. Florida-Vanderbilt Development Corp., 464 F.2d 267, 271 (5th Cir.), cert. denied, 409 U.S. 1041, 93 S.Ct. 527, 34 L.Ed.2d 491 (1972). In Chandler the court stated,

We recognize that under the Florida case law there are three remedies available to lessors when their lessees breach a lease agreement. However, these remedies are not established as the sole remedies which may be provided for lease breaches, but are intended to supply remedies when none are provided in the lease or when broader contractual lease remedies violate public policy.

In this case, the lease specifically provides that when the landlord takes possession upon default and re-lets for the account of the tenant, the tenant is liable for minimum rent due minus the net proceeds of re-letting on a monthly basis. Further, the lease entitled the landlord to "recover the same from Tenant on each such day."

Because the parties have stipulated that the lease was not terminated and that Vareka is in possession of the premises for the account of AIP, the district court correctly granted summary judgment as to liability based upon section 9.02(b) of the lease.

## C. Accrual of the Cause of Action for Damages

■ AIP also argues that under Florida law, a lessor operating for the account of the lessee has an affirmative duty to mitigate damages by making a good-faith effort to re-let the premises. Robinson v. Peterson, 375 So.2d 294, 296 (Fla.App.1979). AIP argues that hiring Coldwell Banker to operate the office park and entering into subleases of office suites with new and renewing subtenants did not satisfy the affirmative duty to use good efforts to re-let. At oral argument, it became clear that AIP's position is that Vareka was required to re-let the premises to a prime tenant, such as AIP had been, who would then sublease to other tenants.

AIP correctly states Florida law:

Had the lessee prevailed on the question of whether the lessor did in fact use good

efforts to re-let, the lessor's right of recovery would have been entirely defeated.

*Robinson v. Peterson* at 297. This language does not preclude recovery of damages in this case.

After resuming possession, Vareka retained Coldwell Banker Property Management Corporation to manage The Quarters. Although Coldwell Banker did not ˙find a new prime tenant, AIP concedes that Coldwell Banker entered into subleases of office suites with new and renewing subtenants. The cases cited by AIP for the proposition that Vareka had an affirmative duty to re-let, *Robinson v. Peterson* and *Coast Federal Savings,* both involve a single lease rather than a "prime lease and sublease" fact pattern. *Robinson v. Peterson,* 375 So.2d 294 (Fla.App.1979); *Coast Federal Savings and Loan Association v. DeLoach,* 362 So.2d 982 (Fla.App.1978). Thus, in their single lease fact patterns, "re-letting" was the only means available to mitigate damages. In *Kanter v. Safran,* the court stated:

> [This case] eliminates any thought that the lessor is necessarily required to seek an assignment of the defaulting lessee's specific interests or to sell only the remaining term of the original lease, since that term is 'at an end.' He is required only to recoup only what he can in good faith, consistent with his own interest as well as that of the defaulting lessee.

*Kanter v. Safran,* 82 So.2d 508, 509 (Fla. 1955). Although not specifically applicable to this case, *Kanter* indicates that Florida law requires a good-faith effort to mitigate damages as opposed to requiring mitigation of damages by a specific method. Further, section 9.02(b) of the lease specifically gives the landlord authority to execute any subleases and specifies that the tenant is liable for damages "whether or not the Premises or any part thereof be re-let." Because the district court found that Coldwell Banker's management had "been efficient and successful," Vareka satisfied Florida's requirement that the lessor mitigate damages and thus, was not precluded from recovering damages.

### D. Mitigation of Damages

■ AIP asserts that the documentary evidence was insufficient to show damages. Upon re-entry, Vareka retained Coldwell Banker Property Management Corporation to manage the operation of The Quarters Office Park. Review of the record indicates that there was sufficient detail to support the expenses recoverable by Vareka under the terms of the lease. The district court concluded that the "monthly reports for the operation of The Quarters, as prepared by Coldwell Banker, are not in error." Thus, we find the district court's award of damages correct.

### E. The Jurisdictional Prerequisites of Rule 4(a)(4)

■ Vareka argues that AIP's trial court motion to alter or amend was not in fact a motion under Fed.R.Civ.P. 60, but a motion to alter or amend under Fed.R.Civ.P. 59(e). Consequently, AIP should have filed a notice of appeal within thirty days after docketing of the order denying the motion to alter or amend. Fed.R.App.P. 4(a)(4).

On June 14, 1982, AIP filed a motion to alter or amend pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. On July 9, 1982, the district court, without discussion, denied the motion. On October 29, 1982, a panel of this court denied Vareka's motion to dismiss this appeal, stating that the trial court motion in question was to be treated as a "rule 60 motion rather than a rule 59 motion, so that Fed.R.App.P. 4(a)(4) does not apply." The panel correctly denied the motion to dismiss. Review of AIP's original motion to alter or amend did not address itself to the merits of the case, as Vareka argues. Consequently, this appeal is properly before the court. *Smith v. United States Parole Commission,* 721 F.2d 346 (11th Cir.1983).

We therefore affirm the final judgment of the district court.

AFFIRMED.