[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 11, 2005
THOMAS K. KAHN
CLERK

—————————————————

No. 04-15675

—————————————————

D. C. Docket No.04-01996-CV-CC-1

DOUGLAS J. MACGINNITIE,

Plaintiff-Appellant,

versus

HOBBS GROUP, LLC,
HILB, ROGAL AND HOBBS COMPANY,

Defendants-Appellees.

—————————————————

Appeal from the United States District Court
for the Northern District of Georgia

—————————————————

**(August 11, 2005)**

Before TJOFLAT and KRAVITCH, Circuit Judges, and MILLS[*], District Judge.

KRAVITCH, Circuit Judge:

---

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

In this case involving restrictive covenants in an employment contract, we decide two questions. In a matter of first impression for our court, we hold that our "total activities" test for a corporation's principal place of business for diversity jurisdiction purposes applies to determine the citizenship of a defendant corporation which once operated in the same state as the plaintiff but has since been purchased by and integrated into an out-of-state corporation as a holding company. We further conclude that because the defendant corporation's principal place of business is in the same state as the purchasing corporation, the federal courts have jurisdiction over a suit by a citizen of the defendant corporation's former home state. Second, we vacate and remand the district court's denial of preliminary injunctive relief.

## I.

Defendant-Appellee Hobbs Group, LLC ("Hobbs"), an insurance brokerage firm, employed Plaintiff-Appellant Douglas J. MacGinnitie as its Senior Vice President and General Counsel in 1998. Hobbs is incorporated in the State of Delaware, and until 2002 it undisputably had its principal place of business in the State of Georgia. Defendant-Appellant Hilb, Rogal & Hobbs Company ("HRH"), also an insurance brokerage firm, agreed to purchase Hobbs in 2002. HRH is incorporated and has its principal place of business in the Commonwealth of

2

Virginia.

When Hobbs first employed MacGinnitie, MacGinnitie signed a form employment agreement which Hobbs had drafted. The agreement included restrictive covenants which are at the heart of the present action. The employment agreement's non-solicitation provision prohibits MacGinnitie from engaging in certain activities for a period of two years after termination of his employment. Among other things, MacGinnitie agreed not to:

[d]irectly or indirectly solicit for employment any person who is an employee of [Hobbs], unless [Hobbs] first terminates the employment of such employee or [Hobbs] gives its written consent to such employment or offer of employment;

[c]all on or, directly or indirectly, solicit, divert, or take away any insurance-related business from [Hobbs], or, directly or indirectly, accept insurance-related business from, provide insurance related consulting services of any kind to, or perform any of the services offered by [Hobbs] for, any person, firm, corporation or other entity who is a customer of [Hobbs] or who is, or during the two-year period prior to [MacGinnitie's] termination of employment was, a

3

prospective customer of [Hobbs] with whom [MacGinnitie] had direct contact, or, directly or indirectly, encourage any such customer to cease doing business with [Hobbs].

The employment agreement also contained a confidentiality provision which obliged MacGinnitie not to "make use of, divulge, or otherwise disclose, directly or indirectly, whether during the period of [MacGinnitie's] employment with [Hobbs] or at any time thereafter, any Confidential Information . . . except to the extent such use, divulgence or disclosure is made in connection with [MacGinnitie's] employment and for the benefit of [Hobbs]."

At the time of the acquisition of Hobbs, HRH presented MacGinnitie with an acknowledgement agreement, under which MacGinnitie acknowledged the non-solicitation and confidentiality provisions of the employment agreement. The new contract also added a new paragraph to the employment agreement which provided that

[MacGinnitie] grants to [HRH] during the term of this Agreement the continuous and unilateral right, upon written notice to [MacGinnitie] of 45 days, to lessen the restrictions of any of the covenants set forth herein by so much as [HRH] deems necessary either to make this

4

Agreement in accordance with the policy of the State of Georgia or to fit the circumstances peculiar to [MacGinnitie].

MacGinnitie alleges that he was subsequently forced to leave HRH shortly after the acquisition because his position was eliminated and his job duties reassigned to attorneys working at HRH headquarters in Richmond, Virginia. Defendants, on the other hand, claim that they did nothing to force MacGinnitie's departure from the company. After MacGinnitie resigned from HRH in September 2003, he and a partner opened a new insurance brokerage business, Beecher Carlson Risk Management, Inc.

MacGinnitie filed the present action for declaratory and injunctive relief in Georgia state court in 2004, alleging that the language of the non-solicitation and confidentiality provisions effectively prevents him from competing with HRH. The defendants filed a timely notice of removal, claiming federal jurisdiction under the diversity statute, 28 U.S.C. § 1332. MacGinnitie filed a motion for remand, but the district court found that diversity jurisdiction existed and denied the motion.

After the denial of the motion for a remand, MacGinnitie renewed his motion for a preliminary injunction barring enforcement of the allegedly

unenforceable covenants. The district court refused to grant the injunction on three grounds: first, that MacGinnitie was not likely to succeed on the merits because the covenants were not overbroad; second, that MacGinnitie would not suffer irreparable harm because he was not licensed personally to sell insurance in Georgia; and third, that the balance of harms weighed in HRH's favor because it might lose a significant number of clients and employees if the injunction were granted. Following the ruling, MacGinnitie filed a timely appeal.

## II.

MacGinnitie contends that the district court lacked subject-matter jurisdiction over the present case and should have remanded it to the Georgia state court from which it was removed. We review rulings on the subject-matter jurisdiction of a federal court de novo. Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). Factual findings regarding the citizenship of a party are subject to a clearly erroneous standard of review. McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002).

MacGinnitie claims that the district court lacked subject-matter jurisdiction over the present action because there was not complete diversity between the

parties at the time the complaint was filed.[1]  Complete diversity requires that no

defendant in a diversity action be a citizen of the same state as any plaintiff.  28

U.S.C. § 1332; Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1992).  For

diversity purposes, a corporation is a citizen of both the state where it is

incorporated and the state where it has its principal place of business.  28 U.S.C. §

1332(c).  Citizenship for diversity purposes is determined at the time the suit is

filed.  Harris v. Gardner, 216 F.3d 970, 983 (11th Cir. 2000).

We have adopted the "total activities" test to determine a corporation's

principal place of business.  See Vareka Investments, N.V. v. American

Investment Properties, Inc., 724 F.2d 901, 910 (11th Cir. 1984).  This test

combines the "place of activities" test and the "nerve center" test used by other

circuits.  Sweet Pea Marine, Ltd. v. APJ Marine, Inc., 411 F.3d 1242, 1247 (11th

Cir. 2005).  Under the "place of activities" test, the location of the majority of the

corporation's sales or production activities is its principal place of business.  Id.

Under the "nerve center" test, the location of the corporate offices is generally the

principal place of business.  Id.

---

[1]The defendants claim that MacGinnitie is estopped from claiming that Hobbs is a citizen
of Georgia by its filing in a separate action in a Connecticut court.  The law is well-settled,
however, that principles of estoppel and waiver do not apply to a federal court's acquisition of
subject-matter jurisdiction.  American Fire & Cas. Co. v. Finn, 341 U.S. 6 (1951); Hertz Corp. v.
Alamo Rent-A-Car, 16 F.3d 1126, 1130-31 (11th Cir. 1994).

The total activities test requires a somewhat subjective analysis to choose between the results of the nerve center and place of activities tests, if they differ. Toms v. Country Quality Meats, Inc., 610 F.2d 313, 315 (5th Cir. 1980).[2] We provided guidance as to how the district courts should balance the two tests in Sweet Pea Marine. Where a company's activities are not concentrated in one place, a district court is entitled "to give these 'nerve-center'-related facts greater significance" in determining principal place of business. Sweet Pea Marine, 411 F.3d at 1247.

According to MacGinnitie, Hobbs' principal place of business was in Georgia at the time the suit was filed, because the principal place of business of an "inactive" corporation remains the same as its last principal place of business while the corporation was still active.

The question of the principal place of business of an "inactive" corporation is one of first impression in this circuit. We need not, however, reach that issue, because our existing total activities test is sufficient to resolve the question before us. The district court found that at the time the suit was filed

Hobbs continued to exist only as an active corporate holding

---

[2]We held in Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) that all Fifth Circuit cases decided prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit.

company . . . that was directed and controlled from HRH's corporate headquarters in Virginia. Every decision necessary to realize the strategic advantage offered by Hobbs' continued, passive existence was and continues to be made in HRH's Virginia corporate headquarters by HRH officers. Thus, at the time [MacGinnitie] filed [his] complaint, the "nerve center" of Hobbs, for purposes of determining diversity, could only be in Virginia.

The plaintiff has offered no evidence which suggests that the district court clearly erred in making these factual findings regarding the nerve center of Hobbs. Furthermore, Hobbs is not an "inactive" corporation in the sense in which other circuits have used that term. MacGinnitie cites two lines of cases from other courts in support of his inactive corporation argument. The Second Circuit has taken the view that an inactive corporation is, as a matter of law, a citizen of the state where it "last transacted business." See, e.g., Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 907 (2nd Cir. 1996) (citing other cases). The Pinnacle court employed this test *in dicta*, however, using it to show that the outcome of the case would not change based on which test was applied. Id. The Pinnacle court actually decided the case based on the "nerve center" test. Id.

MacGinnitie also points out that the Fourth and Fifth Circuits have held that a corporation is a citizen of the state of its last place of business unless "a substantial amount of time"—apparently, about 3 years—has passed since it became inactive. Athena Automotive, Inc. v. Digregorio, 166 F.3d 288, 291 (4th

9

Cir. 1999); Harris v. Black Clawson Co., 961 F.2d 547, 551 (5th Cir. 1992). In these two cases, however, the "inactive" corporations engaged in no activity whatsoever, and had not done so for several years. See Athena Automotive, 166 F.3d at 289 (the corporation "ceased all operations" three years prior to the litigation, which litigation was its "only other activity" since then); Harris, 961 F.2d at 549-550 (the corporation's total activities "were zero: it had no business office, no employees or service personnel, and no other ongoing business activities"). In the present case, Hobbs' activity in Georgia has ceased, but it has been engaged in other business activity, under HRH's direction, in Virginia. Even more relevant here, Hobbs was under HRH's direction, from Virginia, at the time this suit was filed.

Because Hobbs was thus a citizen of Virginia, not of Georgia, at the time this action began, we affirm the district court's denial of MacGinnitie's motion to remand this case to Georgia state court for lack of subject matter jurisdiction.

## III.

MacGinnitie also appeals the district court's denial of his motion for a preliminary injunction barring enforcement of the restrictive covenants. To be entitled to a preliminary injunction, MacGinnitie must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the plaintiff unless the

10

injunction issues; (3) that the threatened injury to the plaintiff outweighs the harm to the defendant if the injunction issues; and (4) that the injunction will not disserve the public interest. Bryan v. Hall Chemical Co., 993 F.2d 831 (11th Cir. 1993). The district court found that MacGinnitie failed to show the presence of the first three elements. As to the fourth element, the defendants acknowledged before the district court that the injunction would not disserve the public interest.

We review the district court's ruling on preliminary injunctive relief for abuse of discretion. McDonald's Corp. v. Robertson, 147 F.3d 1301 (11th Cir. 1988).

### 1.    Likelihood of Success on the Merits

MacGinnitie claims that the district court misread the language of the restrictive covenants, ignored other unenforceable covenants, and failed to apply Georgia law correctly. As a threshold matter in evaluating MacGinnitie's claim, we agree with the district court that we must apply "strict scrutiny" to our review of the restrictive covenants, and that such covenants may not therefore be "blue-penciled"; i.e., severed. See Habif, Arogeti & Wynne, P.C. v. Baggett, 231 Ga. App. 289, 290, 498 S.E.2d 346, 349 (1998); Carroll v. Ralston & Assocs., P.C., 224 Ga. App. 862, 481 S.E.2d 900 (1997). The defendants argue that because the case involves the sale of a business, a lower standard applies. Georgia law is

11

clear, however, that even when an employment dispute is part of the sale of a business, if the dispute itself pertains to a contract of employment then the contract must be interpreted under the law governing such contracts. Arnall Ins. Agency v. Arnall, 196 Ga. App. 414, 396 S.E. 2d 257 (1990). We therefore apply strict scrutiny in our review of the restrictive covenants.

The district court held that even under strict scrutiny the non-solicitation covenant is not overbroad because it "only prohibits MacGinnitie from soliciting those clients of HRH and Hobbs with whom he had direct contact during his last two years of employment with defendants."

We disagree and hold that, when properly interpreted, several provisions of the employment agreement are overbroad and unenforceable. One provision states that MacGinnitie may not "accept insurance-related business from . . . any person, firm, corporation or other entity who is a customer of [Hobbs]." A Georgia court held contractual provisions which prevent employees from accepting business from unsolicited former clients to be overbroad in Pregler v. C & Z, Inc., 259 Ga. App. 149, 575 S.E.2d 915 (2003). The Pregler court found that such provisions were overprotective of the former employer and had an unreasonable impact on both the employee's and the public's ability to choose its preferred professional services. Id. This is in keeping with the principle of Georgia law which provides

12

that to be enforceable, a customer non-solicitation covenant must either have a specific territory contiguous with the area serviced by the employee, or be limited to only those customers with whom the employee had a business relationship during some period of the employment. W.R. Grace v. Mouyal, 262 Ga. 464, 467, 422 S.E.2d 529 (1992).

We also disagree with the district court's reading of the non-solicitation provision governing Hobbs customers. Applying strict scrutiny, and resolving ambiguities in favor of MacGinnitie, the clause must be read to prohibit him from dealing with "any person, firm, corporation or other entity who is a customer of [Hobbs]," whether MacGinnitie had prior contact with the customer or not. The provision does contain the limiting words "with whom [MacGinnitie] had direct contact," but a careful reading suggests that this limiting language does not modify the portion of the clause which pertains to MacGinnitie's dealings with actual Hobbs customers, but rather, only the portion pertaining to prospective customers.[3]

---

[3]The full provision is that MacGinnitie may not:

> [c]all on or, directly or indirectly, solicit, divert, or take away any insurance-related business from [Hobbs], or, directly or indirectly, accept insurance-related business from, provide insurance related consulting services of any kind to, or perform any of the services offered by [Hobbs] for, *any person, firm, corporation or other entity who is a customer of [Hobbs]* or who is, or during the two-year period prior to [MacGinnitie's] termination of employment was, a prospective customer of [Hobbs] *with whom [MacGinnitie] had direct contact*, or, directly or indirectly, encourage any such customer to cease doing business with [Hobbs].

13

The district court also failed to consider two other restrictive covenants which are also unenforceable under Georgia law, as MacGinnitie pointed out before the district court and again to this court. The first is the employee non-solicitation provision, which sets no geographical or relationship restriction, but rather prohibits MacGinnitie from soliciting any Hobbs or HRH employee, regardless of place or prior relationship to him. The Georgia courts have refused to enforce such provisions. See, e.g., Hulcher Svcs., Inc. v. R.J. Corman RR Co., LLC, 247 Ga. App. 486, 543 S.E.2d 461 (2000). The second is the confidentiality provision, which contains no time restriction and, MacGinnitie argues, protects information which is publicly available from other sources. Both these deficiencies render a restrictive covenant regarding information unenforceable under Georgia law. Howard Schultz & Assoc. of the Southeast, Inc. v. Broniec, 239 Ga. 181, 188, 236 S.E.2d 265, 270 (1977) (time restriction); Nasco, Inc. v. Gimbert, 239 Ga. 675, 676, 238 S.E.2d 368, 369 (1977) (publicly available information).

Because none of these clauses may be blue-penciled, they are all unenforceable. We therefore conclude that the district court abused its discretion in ruling that MacGinnitie failed to show a substantial likelihood of success on the merits.

14

## 2.    Irreparable Harm

The district court held that because MacGinnitie is not licensed to sell insurance in the State of Georgia, he has not established how he will be irreparably harmed absent injunctive relief.  The defendants claim that MacGinnitie's injuries are not irreparable because they can "be undone through monetary remedies." T.J. Cunningham v. Adams, 808 F.2d 815, 821 (11th Cir. 1987).  We disagree, and hold that MacGinnitie has demonstrated that irreparable harm will occur if the injunction does not issue.

Under Georgia law, MacGinnitie does not need a license to sell insurance himself in order to operate an insurance brokerage business and hire others to carry out insurance sales.  See O.C.G.A. § 33-23-4(h)(2).  The district court's holding to the contrary was an error of law.

Furthermore, MacGinnitie has shown irreparable harm which cannot be undone through monetary remedies, in the form of unenforceable restrictions on his access to customers, employees, and information.  These injuries are in the form of lost opportunities, which are difficult, if not impossible, to quantify. Georgia public policy is clear that restrictive covenants in employment contracts are disfavored as potential restraints of trade which tend to lessen competition. See generally Mouyal, 262 Ga. at 465; Ga. Const. Art. III, § VI, para. V(c);

15

O.C.G.A. §13-8-2. Because of this public policy, the Georgia courts and this court have not hesitated to find irreparable harm in cases involving covenants not to compete. See, e.g., Keener v. Convergys Corp., 342 F.3d 1264 (11th Cir. 2003); Enron Capital & Trade Resources Corp. v. Pokalsky, 227 Ga. App. 727, 729, 460 S.E.2d 136, 138 (1997).

We therefore hold that the district court abused its discretion in ruling that MacGinnitie failed to show irreparable harm.

3.     Balance of the Harms

The district court found that the balance of the harms tipped in favor of the defendants. It held that the defendants may suffer significant injury in lost customers and employees if the injunction issued, while MacGinnitie only loses the ability to compete for a few customers and employees out of all the customers and employees available in the market. We conclude that the district court abused its discretion in ruling that the balance of the harms tipped in the defendants' favor.

The public policy considerations behind Georgia law governing restrictive covenants compel our conclusion. The defendants' argument is, in essence, that they are entitled to protection from competition for customers and employees. Such competition is part and parcel of a competitive economy. MacGinnitie, on

16

the other hand, is harmed by restrictive covenants which are against Georgia public policy because of their negative effect on competition. In purchasing Hobbs, HRH did not purchase the ability to make consumers' and employees' economic decisions for them. Loss of business due to free and fair competition is not a harm; violation of legal rules designed to promote such competition is a harm.

The district court erred in its determination of the first three elements of a preliminary injunction, and the defendants conceded the fourth element before the district court. We therefore find that the district court abused its discretion in denying preliminary injunctive relief in favor of MacGinnitie.

## IV.

For the foregoing reasons, the district court's denial of the plaintiff's motion to remand this case to state court is **AFFIRMED**. The district court's denial of the plaintiff's motion for a preliminary injunction is **VACATED** and this case is **REMANDED** for further proceedings consistent with this opinion.

17