[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------
No. 05-16722
Non-Argument Calendar
----------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 29, 2006
THOMAS K. KAHN
CLERK

D.C. Docket  No. 04-03199-CV-CC-1

JOSEPH SIECH,

                                        Plaintiff-Appellee,

                        versus

HOBBS GROUP, LLC,
HIB, ROGAL AND HOBBS COMPANY,

                                        Defendants-Appellants.

----------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
----------------------------------------------------------------

**(August 29, 2006)**

Before EDMONDSON, Chief Judge, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellee Joseph Siech sued his former employer Hobbs Group LLC ("Hobbs") and Hobbs's parent corporation Hilb, Rogal and Hobbs Company ("HRH") seeking (i) a declaratory judgment that the nonsolicitation and nondisclosure clauses (the "restrictive covenants") in an Employment, Non-Solicitation and Confidentiality Agreement that he signed in 1997 with Hobbs (the "Employment Agreement") are unenforceable as a matter of law; and (ii) an injunction prohibiting Hobbs and HRH from attempting to enforce the restrictive covenants. Defendants-Appellants Hobbs and HRH appeal the district court's determination that the restrictive covenants are unenforceable as a matter of law, and the grant of summary judgment in favor of Siech. No reversible error has been shown; we affirm.

Siech was employed as a commercial insurance agent by Hobbs when, on 22 October 1997, Siech executed the Employment Agreement with Hobbs. Around the time that Siech executed the Employment Agreement, management of Hobbs bought Hobbs from its then parent company, Arkwright Mutual Insurance Company (the "Management Buyout"). When the Management Buyout closed, Siech owned shares of Hobbs. On 1 July 2002, almost five years after Siech executed the Employment Agreement, HRH purchased all interests in Hobbs. On 1 November 2004, HRH terminated Siech's employment.

Applying Georgia law,[1] the district court determined the restrictive covenants in the Employment Agreement were subject to strict scrutiny and were unenforceable. Indeed, as the district court noted aptly, we have already considered this same form agreement between the same defendants and other employees, applied strict scrutiny and concluded that the covenants were overbroad and unenforceable under Georgia law. See MacGinnitie v. Hobbs Group, LLC, 420 F.3d 1234, 1241 (11th Cir. 2005).

Defendants contend that, had they had the opportunity to conduct further discovery, they may have been able to gather facts that would support their argument that "sale of business" scrutiny should apply. According to Defendants, Siech signed the Employment Agreement in connection with the Management Buyout.[2] Because Georgia law subjects restrictive covenants that are ancillary to the sale of a business to a lesser scrutiny, Defendants argue the Employment Agreement may be blue-penciled or reformed so as to be enforceable.

---

[1]The Employment Agreement provided that Connecticut law would apply. We see no error in the district court's conclusion that Georgia courts would apply Georgia law to the issue of the enforceability of the restrictive covenants. See Nasco Inc. v. Gambit, 238 S.E.2d 368, 369 (Ga. 1977); Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1369-70 (11th Cir. 2003).

[2]MacGinnitie rejected sale of business scrutiny based on the 2002 purchase by HRH; it is controlling on that issue. Defendants argue that Siech -- unlike the employee in MacGinnitie -- participated in the Management Buyout. Based on Siech's 1997 purchase, Defendants seek to trigger sale of business scrutiny.

3

Defendants argue correctly that "[u]nder Georgia law, the level of scrutiny applied to a covenant not to compete depends on whether it is ancillary to the sale of a business or ancillary to employment." Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc., 404 F.3d 1297, 1303 (11th Cir. 2005). A covenant ancillary to the sale of a business is subjected to a low level of scrutiny and may be blue-penciled or reformed to bring it into conformance with Georgia law. See id. This low level of scrutiny recognizes that the purchase price paid by the buyer includes a component for the seller's covenant not to compete. See White v. Fletcher/Mayo/Assocs., Inc., 303 S.E.2d 746, 749 (Ga. 1983). A covenant ancillary to employment, however, is subject to strict scrutiny under Georgia law; Georgia courts allow no reformation or blue-penciling of a covenant ancillary to employment agreements to allow enforceability of at least some of the otherwise overbroad covenant. See Palmer & Cay, 404 F.3d at 1303-04.[3]

The district court rejected correctly Defendants argument that the covenants contained in Siech's Employment Agreement were ancillary to the sale of a business. To the extent Defendants argue that they were ancillary to the

_____

[3]Georgia courts have applied an intermediate level of scrutiny to restrictive covenants executed in the context of professional partnerships. See Palmer& Cay, 404 F.3d at 1303 n.12. Defendants cite us to no Georgia authority in which this intermediate level of scrutiny was applied to an employment agreement executed by an insurance agent employee. We decline to extend Georgia law by applying a lessened level of scrutiny in this non-professional, non-partnership context.

4

Management Buyout, they were executed in connection with Siech's *acquisition* of an interest in the business. To trigger the low level scrutiny applicable to covenants ancillary to the sale of a business, the covenant under review must be "made by the seller in conjunction with the sale of a business," not "by the buyer in conjunction with the acquisition of an interest in a business." Redmond v. Royal Ford, Inc., 261 S.E. 2d 585, 588 (Ga. 1979).[4]

The district court concluded correctly that the restrictive covenants were ancillary to employment and were unenforceable under the strict scrutiny standard applied by Georgia courts.

AFFIRMED.

---

[4]Because Siech was a buyer in the Management Buyout transaction, the discovery sought by Defendants is inapposite; no facts about Siech's bargaining power at the time of the management buyout could trigger lessened scrutiny in this case. See Palmer & Cay, 404 F.3d at 1306 n.14.