**Neil F. GARFIELD and Randy Nolte, Plaintiffs,**

v.

**SUNTRUST BANK, Defendant.**

**No. 06 60351 CIV, 06 60351 CIV.[1]**

United States District Court, S.D. Florida.

Oct. 23, 2006.

---

71. *Id.*

72. *Id.*

1. Pursuant to Administrative Order 2006–18 and beginning July 24, 2006, Magistrate Judge Edwin G. Torres has been temporarily paired with Judge Lenard for all new case assignments, all new referrals in existing

See, also, 477 F. Supp.2d 1181.

W. Jeffrey Barnes, Boca Raton, FL, for Plaintiffs.

Carmen Alpizar Hellman, Zumpano Patricios & Winker, Coral Gables, FL, David M. Pernini, Joseph D. Wargo, Julie C. Jared, Wargo & French LLP, Atlanta, GA, Leon Nicholas Patricios, Zumpano Patricios & Winker, Coral Gables, FL, for Defendant.

### ORDER DENYING PLAINTIFFS' AMENDED MOTION FOR REMAND (D.E. 68)

LENARD, District Judge.

**THIS CAUSE** is before the Court on Plaintiffs' Amended Motion for Remand

and Memorandum of Law ("Motion," D.E. 68), filed on July 14, 2006. On July 26, 2006, Defendant Suntrust Bank ("Defendant" or "SunTrust") filed its Memorandum of Law in Opposition to Plaintiffs' Amended Motion for Remand and Memorandum of Law ("Response," D.E. 72). On August 4, 2006, Neil F. Garfield ("Garfield") and Randy Nolte ("Nolte") (collectively, "Plaintiffs") filed their Reply to Defendant's Memorandum of Law in Opposition to Plaintiffs' Amended Motion for Remand and Memorandum of Law ("Reply," D.E. 75). Having thoroughly considered the Motion, the Response, the Reply, and the record, the Court finds as follows:

### I.  Background

Plaintiffs filed their Complaint on or about February 22, 2006 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. (*See* D.E. 1, Ex. A.) In the Complaint, Plaintiffs assert causes of action against Defendant for negligence, breach of fiduciary duty, and constructive fraud. In essence, Plaintiffs allege that, on January 21, 2005, Defendant enabled non-party Allan Greenfield ("Greenfield"), who, along with Plaintiffs, were once members of a foreign limited liability company named Terminal Cash Solutions LLC ("TCS"), to debit $240,000.00 from a TCS account at SunTrust and deposit those funds into another account on which Greenfield was the only signatory. (Compl.¶¶ 2, 25, 53.) Plaintiffs also allege that SunTrust allowed Green-

cases, and all matters previously referred to Magistrate Judge Theodore Klein.

field to withdraw such funds despite the fact that Plaintiff Garfield had notified SunTrust earlier in the month that Greenfield was no longer a manager of TCS, and that, as a result, "instructions as to the TCS accounts" were to *"only* be accepted by SunTrust from Nolte." (*See id.* ¶¶ 51, 53.) Further, Plaintiffs assert that Defendant "refused to reverse the wrongful $240,000.00 debit," impairing TCS's ability to pay its merchants, vendors, and other creditors, and ultimately forcing TCS into bankruptcy. (*Id.* ¶¶ 64–66.)

Plaintiffs seek "compensatory damages, interest, [and] costs" and further seek "leave to amend this Complaint on Motion to add a claim for punitive damages" against Defendant. (*Id.* at 43.) More specifically, Plaintiffs allege in the Complaint that the "aggregate damages to Plaintiffs Nolte and Garfield as a direct and proximate result of the actions of Defendant SunTrust exceed One Hundred Fifty Million Dollars ($150,000,000.00) to date and are ongoing and continuing." (*Id.* ¶ 73.)

Defendant was served with the Complaint on March 2, 2006 and filed a Notice of Removal on March 21, 2006. (*See* D.E. 1.)

## II. The Notice of Removal

In the Notice of Removal (D.E. 1), Defendant asserts that this Court has original jurisdiction over the present action under 28 U.S.C. Section 1332 because complete diversity exists among all parties, and because the amount in controversy exceeds $75,000.00. (Notice ¶ 5.) In support, Defendant cites the Complaint's allegations that Garfield is a resident of Arizona, and

that Plaintiff Nolte is a resident of Florida. (*Id.* ¶ 2; *see also* Compl. ¶¶ 4–5.) With respect to its own citizenship, Defendant alleges that it is a Georgia banking corporation chartered and organized under the laws of the State of Georgia with its principal place of business in Atlanta, Georgia. (Notice ¶ 3.) Further, Defendant notes that Plaintiffs allege "aggregate damages" in excess of the minimum amount in controversy required for this Court to have jurisdiction under Section 1332. (*Id.* ¶ 4; *see also* Compl. ¶ 73.)

## III. The Amended Motion for Remand [2]

In their Motion, Plaintiffs contend that this action must be remanded because Defendant "has not (and cannot) sustain its burden to prove that Federal diversity jurisdiction is proper in this removed action." (Motion ¶ 40.) Specifically, Plaintiffs assert that the declarations attached to Defendant's Notice of Removal demonstrate that "the most activity, employees, and revenue of the Defendant is in Florida," and that, as a result, Defendant's principal place of business is Florida, rather than Georgia, where Defendant is incorporated. (*Id.* ¶ 20.) Accordingly, Plaintiffs contend that Defendant must be considered a citizen of Florida, and that, as a result, diversity jurisdiction does not exist in this action. (*Id.* ¶ 16.)

In its Response, Defendant argues that it is a "far flung" corporation which operates five varying lines of business in eleven (11) different states and Washington D.C.; that its nerve center is Georgia, the state in which its corporate headquarters, all of

---

**2.** On April 17, 2006, Plaintiffs filed a Motion for Remand and Memorandum of Law (D.E. 18), in which they argued, solely on the basis of decisions issued by the Ninth Circuit and district courts in that Circuit, that Defendant is a citizen of Florida and thus improperly removed this action. On June 19, 2006, this

Court issued an Order denying that motion without prejudice, and instructed Plaintiffs to file a Revised Motion for Remand in which they were to cite primarily to decisions issued by the U.S. Supreme Court and the Eleventh Circuit Court of Appeals in support of their arguments. (*See* D.E. 58.)

its books and records, and executive officers and directors, are located; and that, as a result, its principal place of business is Georgia, and not Florida. (Response at 1–2.) Accordingly, Defendant argues that complete diversity exists between the parties, and that the Motion should be denied. (*Id.* at 2.)

In their Reply, Plaintiffs urge the Court to look to the "total activity" of Defendant in determining its citizenship, and reiterate their argument that Defendant's true "principal place of business" for diversity purposes is Florida. (*See, e.g.,* Reply ¶¶ 2–5, 22.) According to Plaintiffs, Defendant must be declared a citizen of Florida, as it "has substantial and ongoing business in Florida which, in many respects, is significantly greater than any other state in which it does business, including Georgia." (*Id.* ¶ 43.)

## IV. Analysis

A civil case filed in state court may be removed to federal court by a defendant if the case could have been brought originally in federal court. 28 U.S.C. § 1441(a). A district court has original jurisdiction over a civil action where the matter in controversy exceeds $ 75,000 and the parties are all citizens of different states. *See* 28 U.S.C. § 1332(a).

Here, the parties do not dispute that the amount in controversy exceeds $75,000. Rather, Plaintiffs argue that because both Defendant and Plaintiff Nolte are citizens of Florida, there is no complete diversity of citizenship in this action, and that, as a result, this case should be remanded to state court. On the other hand, Defendant contends that it is a citizen of Georgia, and thus, removal of this action to this Court was proper.

"For diversity purposes, a corporation is a citizen of both the state where it is incorporated and the state where it has its principal place of business." *MacGinnitie v. Hobbs Group, LLC et al.,* 420 F.3d 1234, 1239 (11th Cir.2005). In determining a corporation's principal place of business, the Eleventh Circuit employs the "total activities" test. *Id.* (citing *Vareka Investments, N.V. v. American Investment Properties, Inc.,* 724 F.2d 907, 910 (11th Cir.1984)). "Under this test, if a corporation conducts the vast majority of its physical operations in a particular state, that state will contain its principal place of business." *MacGinnitie,* 420 F.3d at 1239. Nonetheless, "if a corporation's physical activities are negligible or are dispersed across several states, 'the nerve center, or corporate offices, will be the principal place of business.'" *Id.* (citing *Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 (5th Cir.1980)); *see also Sweet Pea Marine, Ltd. v. APJ Marine, Inc.,* 411 F.3d 1242, 1247 (11th Cir.2005).[3] In such circumstances, the Court is entitled to give facts regarding the corporation's nerve center "greater significance" in determining a corporation's citizenship, as no single place can be called the corporation's "principal" place of business. *Sweet Pea Marine,* 411 F.3d at 1248 (citing *J.A. Olson Co. v. Winona,* 818 F.2d 401, 407 (5th Cir.1987)).

In their Motion, Plaintiffs do not dispute that Defendant's headquarters are located within the State of Georgia, nor do they dispute that Defendant's operations are "far flung." In fact, Plaintiffs admit, repeatedly, that Defendant conducts "active and ongoing business in *several* states," including Florida, as well as Georgia. (Motion ¶ 14 (emphasis added); *see also*

---

**3.** The Eleventh Circuit has further explained that the "total activities" analysis "incorporates both the 'place of activities' test (focus on production or sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policymaking functions of the corporation)." *Vareka,* 724 F.2d at 910.

*id.* ¶¶ 24, 28, 29, 30, 31.) Plaintiffs even characterize Defendant as "a multi-billion dollar banking conglomerate with thousands of business locations in no less than seven separate states and the District of Columbia." (*Id.* ¶ 36.) Plaintiffs, however, urge this Court to disregard these facts and instead compare Defendant's activities in Florida to its business activities in other states pursuant to a "substantial predominance" analysis used by the Ninth Circuit to determine a corporation's principal place of business. (*Id.* ¶¶ 21–25.) Plaintiffs contend that, under such an analysis, it is clear that the amount of business activity Defendant conducts in Florida is "significantly larger" than any other state in which it conducts business, and that, as such, Defendant must be declared a citizen of Florida. (*See, e.g., id.* ¶¶ 31–33, 37, 38.)

The Court declines to apply the "substantial predominance" analysis employed by the Ninth Circuit when the Eleventh Circuit has already established that the citizenship of a "far flung" corporation can be determined by giving "greater significance" to a corporation's nerve center. *MacGinnitie,* 420 F.3d at 1239; *Sweet Pea Marine,* 411 F.3d at 1248. Although Defendant may have more business operations in Florida than in other states,[4] Defendant operates varying lines of business in at least seven separate states, leaving no doubt that Defendant is a "far flung" corporation. Moreover, Defendant's headquarters are located in Georgia, a state in which Defendant also has business operations. Under these circumstances, the

general principles established in *MacGinnitie* and *Sweet Pea Marine* dictate that Georgia is Defendant's principal place of business. Further, because it is undisputed that Defendant is a banking corporation chartered and organized under the laws of Georgia, the Court finds that Defendant is unequivocally a citizen of Georgia. As such, complete diversity jurisdiction exists among the parties in this case. Accordingly, it is:

**ORDERED AND ADJUDGED** that Plaintiffs' Motion to Remand (D.E. 68), filed on July 14, 2006, is **DENIED.**

---

**4.** As it unnecessary for purposes of determining Defendant's citizenship with respect to this Motion, the Court declines to conclude, as Plaintiffs do, that the declarations attached to Defendant's Notice of Removal demonstrate that "the most activity, employees, and revenue [of Defendant] ... is in Florida." (Motion ¶ 15.) For the same reason, the Court also declines Plaintiffs' request for "jurisdictional discovery" on the basis of the declarations submitted by Defendant in opposition to the Motion. (*See, e.g.,* Reply ¶¶ 39–40.)

**1.** Pursuant to Administrative Order 2006–18 and beginning July 24, 2006, Magistrate Judge Edwin G. Torres has been temporarily paired with Judge Lenard for all new case assignments, all new referrals in existing cases, and all matters previously referred to Magistrate Judge Theodore Klein.