NATIONAL AUTO LENDERS,
INC., Plaintiff,

v.

SYSLOCATE, INC., et al., Defendants.

Case No. 09–21765–CIV.

United States District Court,
S.D. Florida.

April 21, 2010.

**1234**

Elizabeth M. Bohn, Esq., Jorden Burt LLP, Miami, FL, for Plaintiff.

Steve W. Cornman, Esq., William Bissett, Esq., Kubicki Draper, Miami, FL, for Defendants.

---

1. NAL has since filed a Motion to File Supplement to Complaint, which would add claims

*ORDER GRANTING PLAINTIFF'S EMERGENCY MOTION FOR PRELIMINARY INJUNCTION*

MARCIA G. COOKE, District Judge.

This matter is before me on Plaintiff's Emergency Motion for Preliminary Injunction [D.E. 89], Defendants' Response in Opposition [D.E. 97] and Plaintiff's Reply thereto [D.E. 108]. An evidentiary hearing was also held on this matter on April 14, 2010, and Defendants were permitted to file a Surreply [D.E. 125]. I am granting Plaintiff's Motion.

## *I. BACKGROUND*

Plaintiff, National Auto Lenders, Inc. ("NAL"), provides indirect lending for car buyers by purchasing installment contracts from retail car dealers in Florida. NAL has a lien on each vehicle under contract to secure the debt. In the event of default, NAL has the right to repossess the vehicles. NAL uses Global Positioning System ("GPS") units to track the vehicles so that it can locate and recover them on default. Between March 2007 and April 2008, NAL purchased 2,450 GPS units from Defendants DriveOK, Inc. ("DriveOK") and SysLOCATE, Inc. ("SysLOCATE") [collectively with DriveOK, "DOS"]. Many of the DOS units are defective and, as a result, NAL has been unable to locate and repossess the vehicles on default. The damages resulting from the DOS units' failure form the basis for NAL's claims in the present action.[1]

DOS merged with Defendant Procon, Inc. ("Procon") in November 2008 and Procon became the surviving corporation. Procon sells GPS units that are different from the defective DOS units at issue in the instant case. NAL agreed to refer its dealers to Procon and negotiated prices on their behalf. NAL's dealers began pur-

based on events which have occurred since the complaint was initially filed.

chasing Procon units at prices negotiated by NAL in April 2008. Those dealers have since purchased 1,900 Procon units and installed them in vehicles worth approximately $18 million. In exchange for referring dealers, Procon gave NAL access to its website so that NAL could track and locate vehicles subject to liens NAL owned. The agreement gave NAL fifteen months of active tracking followed by thirty-three months of inactive tracking with a one time free reactivation period of ninety days. [D.E. 121–6].

Procon began posting a series of click-to-accept agreements on its website in April 2009. NAL was unable to track vehicles with Procon units unless it accepted these agreements. The agreements, *inter alia,* limited Procon's liability for the defective DOS units subject to NAL's Complaint. NAL refused to accept those terms unless Procon agreed to carve out an exception in the agreement for the damages caused by the defective DOS units.[2] On February 10, 2010, 686 F.Supp.2d 1318 (S.D.Fla.2010), I denied Procon's motion to dismiss NAL's Complaint based on the April 2009 agreement. Less than one week later, Procon placed another click to accept agreement (the "February 2010 Agreement") on its tracking websites. Procon refuses to carve out any exception for NAL's claims and the click-to-accept agreement remains on Procon's website. NAL cannot access Procon's website to track its vehicles and locate them in the event of default unless it clicks on and accepts the agreement.

## II. LEGAL STANDARD

█ A preliminary injunction is properly granted if the movant can show: "(1) a substantial likelihood of success on the merits; (2) irreparable harm to the plaintiff unless the injunction issues; (3) that the threatened injury to the plaintiff outweighs the harm to the defendant if the injunction issues; and (4) that the injunction will not disserve the public interest." *MacGinnitie v. Hobbs Group, LLC,* 420 F.3d 1234, 1241 (11th Cir.2005). The plaintiff has the burden of persuasion to clearly establish all four of these requirements. *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 (11th Cir.1998).

## III. ANALYSIS

Plaintiff seeks a preliminary injunction (1) ordering Defendant Procon to continue to provide tracking service to NAL at its normal rates, without requiring NAL to agree to terms purportedly limiting its claims in this case, (2) enjoining Procon from blocking NAL's access to its tracking website unless it accepts the terms of a February 2010 Agreement, (3) enjoining Procon from using the terms of the February 2010 Agreement against NAL to apply retroactively to its claims in this case, and (4) enjoining Procon from interfering with its relationships with its dealers. Procon responds by arguing that it is not required to do business with NAL, or to provide it with services to which NAL is not entitled. Procon asserts that it has made, and will continue to make, tracking services available for units that NAL actually purchased and has prepaid for. Procon, however, refuses to allow NAL to track units it did not purchase. While I agree that Procon cannot be required to enter into new business contracts with NAL, I am granting Plaintiff's Motion to the extent that it relates to GPS units, and the accompanying

---

**2.** Procon argued in its Motion to Dismiss and/or Transfer Venue and Motion to Stay Proceedings and Compel Mediation and Arbitration [D.E. 24] that an agent of NAL accepted one of the click-to-accept agreements.

However, I found that the individuals that accepted the agreement did not have legal authority to bind NAL to its terms. Accordingly, I issued an Order [D.E. 72] denying Procon's Motions.

service, that NAL and/or its dealers have already purchased.

## A. Likelihood of Success on the Merits

 The parties disagree on one central issue in this case—NAL's right to track GPS units that it did not purchase directly from Procon.[3] Based on the arguments presented by both parties, it appears that NAL would only be required to accept Procon's February 2010 Agreement if it wished to track approximately 1900 dealer purchased GPS units. In its initial response to NAL's motion for preliminary injunction, Procon argued that it had no contract with NAL that would require it to allow NAL access to the tracking website for those units. This is not true.

NAL presented testimony and documentary evidence demonstrating that it negotiated the price and terms of use for the 1900 dealer purchased GPS units. NAL introduced a series of emails between Procon and NAL, in which those terms of use were discussed and eventually agreed to. [See D.E. 107–1]. In one email summarizing a verbal quote made by Brian Hugie, a Vice President at Procon, to Asbel Perez, NAL's Vice President and Chief Marketing Officer, an "NAL program" was discussed, in which "NAL dealers would contact Procon SAT Track GPS directly for purchase of their units" after identifying themselves as part of the NAL program. Account information for the various units would then be "placed in the NAL master tracking account or the dealer subaccount within the NAL master tracking account." [See D.E. 107–1, Email from Ralph Long to Brian Hugie, dated April 1, 2008]. Mr. Perez testified that he verbally agreed to these terms in a subsequent conversation with Mr. Hugie. In a later email, Kyle

Fjelstad, a Vice President at Procon, assured NAL that he would have NAL set up as a distributor in Procon's system, which would allow NAL to move the GPS units around and log into dealer accounts. [See D.E. 107–1, Email from Kyle Fjelstad to Ralph Long, dated April 22, 2008]. From April 2008 until February 2010, NAL had access to a tracking website that allowed it to track GPS units that had been purchased by its dealers.

Here, Procon is not arguing that NAL should not have any access to the GPS units purchased by dealers, they are only trying to force NAL to click and accept a new agreement in order to do so. This February 2010 Agreement would limit NAL's preexisting claims against Procon. Procon's entire argument regarding whether NAL should be able to track GPS units purchased by its dealers was only raised in conjunction with this motion, and seems designed only to defeat this injunction. Procon's past practice of allowing NAL to track cars with GPS units purchased by dealers belies this argument. In light of ample evidence supporting NAL's claim that an agreement with Procon allowed it to track the 1900 GPS units purchased by dealers, I find that NAL has demonstrated a substantial likelihood of success on the merits.

## B. Irreparable Harm

 Procon contends that Plaintiff will not be irreparably harmed if it is unable to track the 1900 vehicles it previously had access to because money damages would be an appropriate form of relief. I do not agree. A plaintiff may establish irreparable injury where the total damages associated with plaintiff's losses

---

**3.** At the hearing on NAL's motion, counsel for Procon represented to this court that Procon was allowing NAL to access the Tracking Website for any GPS units NAL actually purchased, including both Procon and DOS units, without requiring NAL to accept any new terms or agreement.

would be difficult to calculate. *Ride–Away Handicap Equip. Corp. v. Tracey,* No. 8:09–cv–2298–T–23TBM, 2009 WL 5821040, \*6 (M.D.Fla. December 29, 2009). NAL funds sub-prime auto loans, which have a 40% or higher default rate. Ozzie Ramos, the Chief Executive Officer of NAL, testified that the 1900 vehicles are currently worth about $18 million, and constitute 50% of NAL's assets. NAL uses a portion of this value to secure its own loans. Although the value of the vehicles is easily quantified, there is no way to quantify the impact on NAL if it were to lose the security for its business loans. Procon also casually suggests that NAL could simply ask the dealers that purchased the units to track any defaulting vehicles. However, NAL's Vice President testified that approximately one-third of the South Florida dealers NAL purchased installment loans from are no longer in business. This evidence, combined with Mr. Perez's testimony that NAL's business would be "devastated" and "potentially put out of business" if they were unable to track 50% of their cars, establishes irreparable harm.

### C. Threatened injury to NAL outweighs harm to Procon

Finally, Procon contests NAL's motion for preliminary injunction by alleging that it would be greatly harmed if the court ordered it to provide services to NAL that NAL did not pay for. First, this is exactly what Procon had been doing for the past two years, without issue. Second, the injunction would only enjoin Procon with regard to the GPS units purchased by dealers under the NAL program, and such services were paid for. Procon has not established that it would suffer any harm, let alone one that would

outweigh the harm to NAL if no injunction is issued.[4]

## IV. CONCLUSION

Plaintiff's Emergency Motion for Preliminary Injunction [D.E. 89] is **GRANTED** as follows:

1. Defendant Procon is enjoined from blocking NAL's access to the tracking website NAL previously accessed to track and locate the 1900 financed cars and trucks that contain GPS units purchased by dealers under the NAL program.

2. Defendant Procon is enjoined from making NAL's access to said site contingent upon the acceptance of any new Subscription Service Agreement or click to accept agreement.

---

4. Both parties agree that the public interest would not be implicated, positively or nega-

tively, by the issuance of an injunction in this case.